# Joseph W. Wierman v. The International Building, Loan and Investment Union.

1. CORPORATIONS—*Limitations on the Power to Make By-Laws.*—A corporation has no power to make by-laws inconsistent with the law of the land, its charters, or the statute under which it was created.

2. BUILDING ASSOCIATIONS—*Must Treat Their Members Equally.*—A building association is a mutual company and is bound to treat its

members equally, and any by-law or contract made by such an association in contravention of such mutuality is *ultra vires* and void.

3. SAME—*Can Not Guarantee Time of Maturity of Stock.*—All contracts and agreements of building associations to the effect that after the payment of a certain sum, less than its face value, stock shall be considered fully paid, are *ultra vires* and void.

BILL, for cancellation of note and reconveyance of property conveyed as security. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed January 4, 1897.

ALEX. J. JONES, attorney for appellant.

ALLAN C. STORY and RUBENS & MOTT, attorneys for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The brief of appellant in this case begins with this statement: "The International Building, Loan & Investment Union, the appellee, is a building and loan association organized under the laws of Illinois, April 16, 1887. Wierman, the appellant, on April 19, 1890, became a member of the association."

Appellee having been so organized and now so existing, it necessarily was and is a mutual company, and appellant, as a member thereof, was and is entitled to such rights, and none other, as might be accorded to any other member. In other words, appellee, as a mutual company, was bound to treat its members equally, and any by-law or contract by it made in contravention of such mutuality, was and is *ultra vires*. A corporation has no power to make by-laws inconsistent with the law of the land, or with its charter, or the statute under which it was created. Kent v. Quicksilver Mining Co., 78 N. Y. 159–182; Thompson on Corporations, Sec. 1011; Morawetz on Private Corporations, Secs. 367, 368.

The by-laws in question, under and by virtue of which the contract with appellant was made, are clearly in violation of the charter of appellee, and the contract of appellant with appellee was and is, as a contract, void.

The Supreme Court of this State, in the case of Rhodes et al. v. Missouri Savings & Loan Co., opinion filed November 11, 1896, held that building and loan associations have no power to issue what is known as "paid-up" stock. It follows necessarily from this, that such associations have not power to issue stock with an agreement that at any time before the actual payment of the face value thereof, such stock shall, by earnings or interest thereon, become fully paid. In the nature of things, it is the case that a building and loan association can not, in advance, know that at any period before the face amount of stock has been paid, the earnings thereon, when added to the amount actually paid, will make it full paid, because what amount or per cent will, in the conduct of the business, be actually earned, can not be known in advance.

All contracts and agreements of building associations to the effect that after the payment of a certain sum, less than the face value, stock shall be considered full paid, are *ultra vires* and void.

The contract under consideration being one repugnant to the statute under which the corporation was created, all persons are chargeable with notice that it was within the powers of appellee. The contract, however, was one which did not involve moral turpitude upon the part of appellant. It was an agreement not *malum in se*, but *malum prohibitum*.

The benefit received by appellee under the arrangement which it made with appellant, is not the alleged contract which it entered into with him, but the money which has been actually paid by him; in other words, as the case now stands, appellant obtained a loan from appellee, which should have been made only in accordance with its chartered rights, so that the terms given to him should not be variant from those offered to every other stockholder and borrower. The money paid by appellant is not to be confiscated, but he is not entitled to anything which appellee had not, under its charter, a right to accord to every member, and he is subject to the burdens imposed upon every member and borrower of the class to which he belongs.

As we understand, appellee, while holding that the contract of appellant is void, is willing to and is proceeding to treat him equitably and justly. The bill of appellant was therefore properly dismissed, and the decree of the Circuit Court is affirmed.

The judgment entered in this court on the 14th day of December, 1896, will be set aside, and a judgment this day entered affirming the decree of the Circuit Court.

Mr. Justice Gary.

I adhere to my original opinion, filed December 14, 1896, which is now my dissenting opinion.

Opinion by Mr. Justice Gary, delivered as the opinion of the Court on December 14, 1896.

This case was heard upon bill and answer, and there is no dispute as to facts—only as to the law upon those facts.

The appellee is a corporation under, or at least under color of " An act to enable associations of persons to become a body corporate to raise funds to be loaned only among members of such associations," in force July 1, 1879.

We say under color of that act, because we understand that the purpose of that act is, that the whole profit which shall accrue in the conduct of such a corporation, is for the benefit of the shareholders equally. It does not appear that the appellee issued its shares in different series, as is usual with such institutions. The by-laws fixed the capital stock at $7,000,000, in shares of $100 each, and provides that " A series of stock, the number of shares to be fixed by the board of directors, shall be issued at the first meeting of each quarter, and at such other times as may be directed by a vote of the board."

Another by-law is:

" And it is hereby expressly agreed between all shareholders and this union that a payment of $100 per share named in his or her certificate that has been in force six years shall be accepted as full payment of all claims on their certificate or against this union."

The appellee was incorporated in the spring of 1887, and April 19, 1890, issued a certificate for ten shares of its stock,

not mentioning any series, to the appellant, which certificate contained the words: "The said International Building, Loan and Investment Union agrees to pay said shareholder or his heirs, executors, administrators or assigns, the sum of $100 for each of said shares, at the end of six years from the date hereof."

A by-law provides that "All shares must be in force six months before said shareholder shall be entitled to a loan, or shall have six monthly installments paid thereon, and hold receipts for same."

And another that "The said shareholder shall not have any claim to any interest in the affairs, assets or funds of this union, nor the control of them, except as above specifically set forth, and assumes no further liability of any kind whatsoever, except as herein described."

In September, 1890, the appellant borrowed from the appellee $1,000 dollars, secured by trust deed in the nature of a mortgage. He paid all his dues, interest, etc.—everything that the appellee could claim—until the expiration of the six years named in his certificate, and then demanded his note and a re-conveyance in pursuance of a stipulation in the deed that when the indebtedness was paid, the premises should be re-conveyed.

We pay no heed to the suggestion or insinuation that the president and secretary could not make the provision as to six years binding upon the appellee.

The certificates are, without doubt, issued upon a printed form adopted, if not by vote of the directors, at least by uniform usage and practice of the appellee. If it be competent for the appellee to make such a contract, it has made it. Now, this corporation is not purely mutual. How otherwise it may be, we need not inquire; and probably more skill as financiers than is ordinarily possessed by judges, is necessary to see how and for whom the scheme can be worked to a profit.

It is very certain that the by-laws intend that somebody shall have a profit.

On its face, the six years provision is not *ultra vires* of such a corporation as the by-laws govern.

Whether such by-laws are *ultra vires* of such a corporation as the statute intends, we will not consider.

The corporation incurred the obligation and enjoyed the benefit it asked. It may not now repudiate. Kadish v. Garden City, etc., 151 Ill. 531.

This bill was filed to enforce the contract, which in effect is to surrender the note of the appellant and re-convey the premises in exchange for his certificate.

The court below dismissed the bill. The decree is reversed and the cause remanded, with directions to that court to grant the relief appellant seeks.