## MIDLAND SAVINGS AND LOAN CO. v. NICOLL et al.

No. 5319.   Opinion Filed April 24, 1919.

Rehearing Denied Sept. 23, 1919.

(Syllabus by the Court.)

**1. Corporations — Foreign Corporations — Building and Loan Associations.**

In order for a foreign corporation to be entitled to exercise the rights, powers and privileges accorded to building and loan associations by art. 19, chap. 18, Wilson's Revised and Annotated Statutes of Oklahoma Territory, and to enforce contracts entered into by it with citizens of such territory in the courts of this state, it must appear that the statute under which such foreign corporation was organized is identical or in all material respects similar to the statutes authorizing the formation of building and loan associations in that territory, and that the character of business conducted by it was substantially like that conducted by such associations in Oklahoma Territory.

**2. Building and Loan Associations—Statutory Definition.**

Section 1217, Wilson's Revised and Annotated Statutes, Oklahoma Territory, declares building and loan associations to be laborers, mechanics, working men, working women and tradesmen who start without any paid up capital, and only pay in on their stock

small weekly or monthly assessments which are immediately loaned to one of the members of the association for the purpose of furnishing a home.

### 3. Same—Foreign Corporation.

Evidence examined, and held, upon the facts stated in the opinion that plaintiff in error was not a building and loan association entitled to exercise the rights, powers and privileges of building and loan associations under the laws of Oklahoma Territory, and that the contracts sued upon were usurious.

### 4. Usury—Usurious Contracts—Interest.

Under section 849, Wilson's Revised and Annotated Statutes, Oklahoma Territory, interest could not be collected upon a contract entered into in Oklahoma Territory which was tainted with usury.

Error from District Court, Noble County; Wm. Bowles, Judge.

Consolidated suits by the Midland Savings and Loan Company against C. K. Nicoll and others, and by Midland, etc., Loan Company against Kate P. Nicholson and others to foreclose mortgages, and action by D. R. Swaney against Midland, etc., Loan Company. From adverse judgments, the loan company brings error. Affirmed.

H. E. St. Clair, A. J. Bryant, and Ames, Chambers, Lowe & Richardson, for plaintiff in error.

P. W. Cress, for defendants in error.

HARDY, C. J. The Midland Savings & Loan Company commenced two separate actions in the district court of Noble county, one against C. K. and Hattie Nicoll and H. A. McCandlass, and one against Kate P. and H. C. Nicholson and J. L. Boyes to foreclose certain mortgages, and another action was commenced in said court against Midland Savings and Loan Company by D. R. Swaney to cancel a mortgage theretofore given by him to said Midland Savings and Loan Company on the alleged ground that same had been fully paid off and discharged. All three of the actions involved the construction of certain contracts entered into between Midland Savings and Loan Company and the other parties, and because of the similarity of the questions of law and fact involved in the several cases, by agreement of the parties, the actions were consolidated and tried together. Judgment was rendered in all of the cases against Midland Savings and Loan Company and the consolidated case was brought to this court for review.

After proceedings in error had been filed in this court, plaintiff in error dismissed as to defendant in error Swaney. One of the grounds of defense urged by the remaining defendants was that the transactions between Midland Savings & Loan Company and said defendants was a mere loan of money and constituted the parties lender and borrower, and that the character of business transacted by Midland Savings & Loan Company under the form of contract entered into was a device and a scheme to evade the usury laws of the territory of Oklahoma and to exact illegal and usurious rates of interest for the loan of money. The evidence shows that plaintiff is a corporation, organized and doing business under and by virtue of the laws of the state of Colorado, with its principal office and place of business at the city of Denver, in said state; that at the time of the transaction involved, to wit: during the year, 1899, it had designated an agent within this territory upon whom service of summons might be had, and had filed in the office of the Secretary of the Territory, a duly authenticated copy of its charter or articles of incorporation. At that time it also had within said territory two or three local agents to solicit and receive applications for stock and loans of its money which were submitted to the home office for approval. At the time of the trial, the number of such agents employed by plaintiff was twenty-five. When applications for loans were accepted, drafts therefor payable jointly to its local agent and the borrower were mailed to the local agent for delivery to the borrower. The by-laws provide for the issuance of various kinds of stocks, viz., monthly installment, prepaid, full paid, deposit and permanent shares. Holders of monthly payment stock were required to make stipulated payments thereon at periodical times and had certain privileges upon the withdrawal or maturity of shares. Prepaid stock was issued on a single advanced payment which was deemed sufficient, with the earnings thereon, to mature the stock at a given period. This class of stock might be withdrawn after a certain time with 7 per cent. monthly compounded interest, less 2 per cent. of par value for which transferable life membership certificates were given. Full paid stock was issued on the single advanced payment of $100 per share, which bore interest at 8 per cent. per annum from date, payable semi-annually. Deposit stock was issued for one or more shares upon the deposit of any sum at the time most convenient to the holder of such stock. If the sum deposited was left with the company more than six months, the holder was entitled to draw 6 six per cent. annual interest and if left over one year 8 per cent. interest. Upon the maturity of any certificate of stock the holder was entitled

(a) to take its full value in cash, or (b) to exchange same for a paid up certificate of equal face value, with guaranteed annual interest thereon at 8 per cent. payable semi-annually, or (c) to convert the par value of the certificate and its subsequent net earnings into an annuity, payable in installments of $10 per share per year, the annuity to continue until the principal and its net earnings were exhausted, which time was guaranteed to be not less than 21 years. In addition to the classes of stock enumerated, the board of directors were authorized to provide by resolution for the issuance of such other series and further classes of stock as they might find from time to time necessary and expedient to meet the requirements of the business and advance the interests of the company.

The by-laws authorized the loan of its funds upon improved real estate first mortgage loans, and also authorized the loan of its funds for the purpose of improving real estate, but in this latter class of loans it was provided that no money should be paid out until the buildings were under roof and insurance policy thereon furnished the company.

The authorized capital at the time of trial was $7,000,000; it had loaned in Oklahoma approximately one and one-half million dollars and was loaning in the territory $25,000 per month. It had a salary and office expense account of $25,000 to $30,000 per annum, and paid out for agent expenses, salaries and commissions $10,000 to $15,000 per annum. The president received a monthly salary of $700, and the secretary a monthly salary of $600. The company had a reserve fund of approximately $50,000, and, in addition, at the time of trial held undivided profits amounting to more than $63,000; for the year 1909, paid a dividend to its stockholders of 12 per cent. and had paid an average dividend during the life of the corporation of 11 per cent. The contracts in question provided for interest upon the amount borrowed at the rate of 7½ per cent. per annum and for an arbitrary premium of 62½ cents for each hundred dollars borrowed, making 15 per cent. for the use of the money loaned, and further provided for a fine of 2 per cent. per month upon all delinquent payments, while they remained delinquent.

By its general findings in favor of defendants, the court, in effect, found that the contracts sued upon and plaintiff's method of doing business constituted a device to evade the usury laws of Oklahoma Territory, and to collect illegal and usurious rates of interest for the loan of its money. This was a question of fact (Union Savings Association v. Cummings, 75 Oklahoma), and there was sufficient evidence reasonably tending to support the finding.

The legal rate of interest in Oklahoma Territory at that time was 12 per cent. Sec. 847, Wilson's Rev. and Ann. Stat. We think it is apparent that the business conducted by plaintiff was not in keeping with the aim and purpose of building and loan associations, which originally were formed for the purpose of enabling the members thereof to provide a fund by means of small periodical payments which could be loaned to members upon advantageous terms for the purpose of enabling them to become home owners and thus encourage thrift and economy, and thereby promote good citizenship. The members were usually people of limited means who were unable to borrow money by the usual and ordinary methods and the underlying idea was to accommodate the poorer and less fortunate members of society by permitting them to make payment of small sums out of their current wages, and thus obtain the means of owning modest homes. Such associations were usually local in their operations and were supposed to be prudently and economically managed and when so organized and managed were productive of industry and frugality upon the part of the members and were entitled to the confidence of the classes of persons for whose benefit they were organized. 9 C. J. 920, 921; Endlich on Building & Loan Associations, 6. By section 1217, Wilson's Rev. and Ann. Stat., it was declared that building and loan associations in Oklahoma Territory were laborers, mechanics, working men, working women and tradesmen who start without any paid up capital and only pay in on their stock small weekly or monthly assessments which are immediately loaned to one of the members of the association for the purpose of furnishing him a home, and because of such character these associations were granted certain privileges enumerated in art. 19, ch. 18, Wilson's Rev. and Ann. Stat. But building and loan associations have not always preserved this character, nor always conducted the class of business for which they were originally organized. They have in later years, in many instances lost their local character. and instead of conducting a business for the primary purpose of enabling its shareholders to become home owners have degenerated into associations whose principal business is the loaning of money to its borrowing members at excessive and illegal rates of interest in order to pay large profits

to non-borrowing members. The ingenuity of men has been taxed to its utmost in the invention of every conceivable scheme and device which will enable such associations to evade the usury laws of the various states and obtain usurious rates of interest for the loaning of its moneys, and the courts should tear off the mask and look to the true nature of the transaction. Andrews v. Pace, 30 Md. 485. The plan of business of plaintiff company shows that various classes of stock bear a guaranteed rate of interest amounting to 8 per cent. and that the stock of all shareholders may be converted into an annuity, and that loans may be obtained irrespective of the intention to use the money in the building of a home, or the improvement of real estate.

There is no limit to the amount of stock which an individual may acquire, nor is there any limit to the amount of money which he may deposit in exchange for prepaid stock and receive stipulated interest thereon. The amount of salaries to be paid to its officers, and the amount of compensation to be paid to its soliciting agents rests solely within the discretion of the board of directors, and the powers possessed and exercised by it under its general plan of business is far in excess of, and widely different from, that conferred upon building and loan associations by the laws of Oklahoma Territory. Its working capital instead of being accumulated from monthly subscriptions out of the savings of its members may, under its plan of business, be furnished by capitalists investing their surplus funds in interest bearing stock. The benefits accruing to, and the obligations of, the various classes of stockholders are not strictly equal or mutual, and we conclude that plaintiff is not a building and loan association, except in name, but that it is a corporation created for the purpose of lending money and earning dividends to which, for the purpose of evading the usury laws of the several states, some of the features of a building and loan association have been attached. And because of its dissimilarity to the general plan of building and loan associations as originally formed and as contemplated by the territorial statutes, it is not entitled to be considered as such, nor to claim any of the benefits which the statutes intended to confer upon corporations of that class. The excessive rates of interest charged convince us that the association was not intended to encourage co-operation among the poor, and enable persons of small means to acquire homes, but was intended as a medium for the loaning of money at an illegal rate of interest. It is true that this court has held

that contracts entered into by this plaintiff, prior to statehood, with residents of Indian Territory are to be construed by the laws of Colorado, and were enforceable in the courts of this state. Midland Savings & Loan Co. v. Henderson, 47 Okla. 693, 150 Pac. 868; Midland Savings & Loan Co. v. Drake et al., 62 Oklahoma, 161 Pac. 787. And has also held that similar contracts entered into with residents of Oklahoma Territory were governed by the same rule. Legg v. Midland Savings & Loan Co., 55 Okla. 137, 154 Pac. 682; Midland Savings & Loan Co. v. Kuntz et al., 58 Okla. 156, 158 Pac. 604. And has also held that when contracts were entered into with citizens of this state, since the Constitution was adopted, plaintiff and like corporations could exercise no greater nor different rights, powers, or privileges than were accorded to domestic corporations of like character. Midland Savings & Loan Co. v. Deaton, 57 Okla. 622, 157 Pac. 285; Midland Savings & Loan Co. v. Summers, 58 Okla. 641, 160 Pac. 488. In none of these cases, however, was the question presented or determined as to whether plaintiff was a building and loan association within the meaning of the territorial statutes, or whether its method of doing business was a device to evade the usury laws. In order for plaintiff to claim immunity from the statutes against usury as a building and loan association, it must appear that the statutes under which plaintiff was incorporated were identical or in all material respects similar to the statutes authorizing the incorporation of building and loan associations in the territory, and that the character of business conducted by it was substantially like the business of domestic building and loan associations; and where this is not made to appear, the courts of this state will not recognize its claim to special privileges greater than those granted to such corporations under contracts entered into under the guise of a building and loan association for the purpose of evading the law prohibiting the charging of usury. Janett v. Cope, 68 Pa. 67; Kupfert v. Guttenberg, etc., Ass'n., 30 Ia. 465; Rhoades v. Hoernerstown, etc., Ass'n, 82 Id. 180; Endlich, Building & Loan Assns., 2nd Ed., sec. 274; 5 Thompson, Corp., sec. 6628; Meroney v. Atlanta Building & Loan Ass'n., 116 N. C. 882, 47 Am. St. Rep. 841; Cole v. Airey et al., 125 Ill. 43; Rhoades et al. v. Mo. Savings & Loan Co., 173 Ill. 621; Williar v. Baltimore Bldg. & Loan Ass'n., 45 Md. 546.

In the Nicoll case defendant subscribed for 30 shares of stock and applied for a loan of $500, and received, in fact, $451.40, upon which they made 38 payments of approxi-

mately $14.95 each, the total of such payments amounting to $564.30. About October, 1902, these defendants offered to repay the amount borrowed with 12 per cent. interest thereon from date of the loan to the time of payment, if given credit for the withdrawal value of their stock, which proposition was rejected by the association. Suit was not brought until August 3rd, 1907. In its petition plaintiff's claim was itemized as follows: principal of the loan, $500; interest and premiums from October, 1902, to August, 1907, $368.75; fines for delinquencies, $198.86; insurance premium paid, $9.00; interest on advances, $2.86; tax sale certificate purchased to protect property for 1905, $28.55; interest on taxes, $3.86; attorneys' fees, $50; making a total due on all accounts of $1,161.88. Defendants were credited with withdrawal value of stock, $249.30, also with taxes paid after suit was commenced, $32.41, leaving a final balance of $880.17. This summary of the claim of plaintiff in the Nicoll case is a fair example of the situation in the Nicholson case.

Having reached the conclusion that plaintiff was not entitled to the benefits of the statutes regulating building and loan associations. and that, by reason thereof, the contracts sued upon were usurious, plaintiff was not entitled to demand or collect any interest thereon. Section 849, Wilson's Rev. and Ann. Stat.; Aetna Bldg. & Loan Assn. v. Harris, 67 Oklahoma, 170 Pac. 700. This being true, and defendants having more than paid the amount loaned, judgment was properly rendered for defendants. This view of the case renders unnecessary a consideration of the other questions urged.

The judgment is affirmed.

RAINEY, HARRISON, PITCHFORD, and JOHNSON, JJ., concur.