## MIDLAND SAVINGS & LOAN CO. v. GAST HEIGHTS DEVELOPMENT CO.

No. 9669—Opinion Filed Feb. 15, 1921.

Rehearing Denied April 26, 1921

(Syllabus.)

1. **Building and Loan Associations—Loan Contract — Competitive Bids — Interest Rate.**

A loan of money made by a building and loan company in October, 1910, though purporting to be a building and loan contract, but made in violation of article 7, chap. 15, Rev Laws 1910, in that it was made for what is termed a level 2% premium, and not upon competitive bids, as required by said statute then in force, was not a building and loan contract, but a mere loan of money and restricted as to the rate to be charged by article 6, chap, 12, Rev. Laws 1910.

2. **Same—Usurious Loans.**

A contract for a loan of money, not being a building and loan contract for the reasons stated in paragraph 1 hereof, which provides for an annual rate of interest in excess of the maximum rate allowed by section 1004, Rev. Laws 1910, is usurious.

3. **Usury—Recovery of Penalty—Statute.**

Section 1005, Rev. Laws 1910, provides: In case a greater rate of interest has been paid than is allowed by law to be charged, the person by whom it has been paid, or his legal representatives, may recover from the person taking or receiving same, twice the amount of interest so paid.

4. **Same—Action for Penalty Before Payment of Usury—Effect.**

In an action to recover for usury and penalties, where it appears from the record that the legal obligation and contract has not been satisfied, and that no usurious payments have been made, the party bringing such action is not entitled to recover for usury nor for attorney's fees.

5. **Usury—Action for Penalty—Attorney's Fee.**

Under section 1006, Rev. Laws 1910, where an action is brought for the recovery of usury and penalties, the prevailing party is entitled to recover a reasonable attorney's fee, to be fixed by the court at not less than $10.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by the Midland Savings & Loan Company against the Gast Heights Development Company to foreclose mortgage. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Loyal J. Miller and A. J. Bryant, for plaintiff in error.

Asp, Snyder, Owen & Lybrand, for defendant in error.

HARRISON, C. J. This was an action in the district court by the Midland Savings & Loan Company to foreclose its building and loan mortgage on lots 27 and 28, block 7, Gast Heights addition to Oklahoma City. Plaintiff in error will herein be referred to as the loan company, and defendant in error as the development company. The questions involved are: First, whether the contract and mortgage sued upon was a building and loan contract within the purview of our statutes; second, whether defendant in error, the development company, which was not the borrower, but a purchaser of said lots at an execution sale subject to said building and loan mortgage and had made all payments which had become due on said mortgage, may claim and recover usury and penalties. A determination of these questions, together with the questions arising out of same, will decide the case.

As to the first proposition, we are of the view that the trial court properly held that the contract in question was not a building and loan contract within the purview of our statutes, inasmuch as it had been made without bids and upon what is understood as a level 2 per cent. premium rate, in addition to the maximum contract rate of 10 per cent. per annum allowed by law, and not made upon competitive bids as required by the statutes then in force, to wit, article 9, chap-15, Rev. Laws 1910, as construed and applied in Aetna Building & Loan Ass'n v. Rouch, 32 Okla. 735, 124 Pac. 24; Midland Savings & Loan Co. v. Deaton, 57 Okla. 622, 157 Pac. 285; Midland Savings & Loan Co. v. Tuohy, 69 Oklahoma, 170 Pac. 244, and more recently in Holt et al. v. Aetna Building & Loan Ass'n, 78 Okla. 307, 190 Pac. 872.

The contract not being a building and loan contract for the reasons above stated, it then became a mere loan of money, and, as it provided for a rate in excess of the maximum rate allowed by law (section 1004, Rev. Laws 1910), it was a usurious contract, as similar contracts have been held to be by this court in Midland Savings & Loan Co. v. Nicoll, 76 Okla. 27, 183 Pac. 731, and Aetna Building & Loan Ass'n v. Harris et al., 67 Oklahoma, 170 Pac. 700.

The second question, namely, whether the development company may recover usury and penalties, depends upon the facts in the case, which are:

In October, 1910, Ben R. Farrar obtained a loan of $1,400 from said loan company and executed the mortgage herein sued upon to secure payment of same. The loan company also issued forty shares of stock to Farrar which were assigned by Farrar as further security for the loan. The lots in question had previously been purchased by Farrar from the development company, defendant in error, and a mortgage given by Farrar to said company to secure payment of the purchase money, amounting to $1,100. The development company withheld its mortgage from record until after the loan company's mortgage had been recorded, hence the loan company's mortgage became a first mortgage and the development company's a second mortgage. Subsequent to these transactions, Farrar caused a dwelling house to be erected on the lots. The Morse Lumber Company furnished the material and labor for the construction of the house, and upon Farrar's failure to pay for same brought suit to foreclose its materialman's lien, and made Ben R. Farrar, Midland Savings & Loan Company, and Gast Heights Development Company et al. defendants in said suit. Farrar, in the meantime, had removed from the state, having made no payments upon the loan. The development company, however, in order to protect itself against foreclosure by the loan company, had made all payments on the loan as they had fallen due, and there having been no default in payments due upon same, it could not at that time declare a forfeiture and foreclose its mortgage. Hence it filed a cross-action, asking that its mortgage be declared a first lien upon the property. The development company filed its cross-action, acknowledging priority of the loan company's lien, and asking that, inasmuch as it had made all payments due upon the loan in order to protect itself against foreclosure by the loan company, it be subrogated to the rights of the loan company, and that it have judgment foreclosing its second mortgage and that the lots be sold to satisfy its second

lien, subject to the loan company's first lien, and also that it have judgment against Farrar for the amount paid upon the loan. Judgment was rendered as prayed for by the development company in its cross-action, decreeing the loan company a first lien upon the lots for $1,400, with interest at 10 per cent. per annum, and the development company's mortgage a second lien for $1,100, and foreclosing said second lien and ordering the lots sold to satisfy such judgment, subject to the loan company's first lien. Pursuant to said judgment, the development company procured an order of sale of the property, the sale was made subject to said first lien, and upon motion of the development company was confirmed and sheriff's deed issued to such company, subject to said loan company's first lien, which deed was accepted by the development company, and the judgment, being submitted to and acquiesced in by it and by the loan company, thereby became final.

Thereafter the development company continued to make payments as they became due on the loan, until it had paid an amount which it claimed to be equal to the principal received under the loan with interest at 10 per cent. per annum, and refused to make further payments. The loan company claimed a balance of $980.93, consisting of premiums, fees, fines, attorney's fees, etc., yet due upon the building and loan contract. Upon refusal of the development company to pay the balance claimed by the loan company, the loan company brought this action to foreclose its mortgage under the strict terms of its said building and loan contract with the borrower, and asked judgment for said balance, $980.93, with interest at 10 per cent. per annum, and for an attorney's fee of $140.

The development company answered, denying further liability and claiming to have paid the whole amount legally due, that such excess was usury, wherefore it prayed judgment for double the excess so paid.

No contractual relationship between the parties with reference to the loan had been formed by any agreement between the companies themselves, but such relationship as did exist between them, in relation to the loan, at the time this action was begun had grown out of rights and obligations created and fixed between them in the former suit, the Morse Lumber Company's suit.

In referring to the judgment in the Morse Lumber Company's suit as fixing the rights and status of these parties with reference to the loan, we mean that portion of the judgment which decreed to the loan company a first mortgage lien for $1,400, with interest at 10 per cent. per annum, and giving judg-

ment to the development company foreclosing its lien for $1,100 subject to the loan company's first lien for $1,400. Although held to be a mere loan for the foregoing reasons, the fact that the mortgage, when construed in connection with the building and loan contract, may have contained usurious features did not destroy the force of the mortgage lien nor defeat the loan company's right to enforce such lien. See Meadors v. Johnson, 27 Okla. 544, 112 Pac. 1121. Hence the court properly decreed a lien upon the lots to secure the mortgage debt.

The "Journal Entry of Judgment of Gast Heights Development Company on Cross-Petition" contains the following:

"Now on this 1st day of June, 1912, the above entitled cause came on to be heard upon motion of defendant, Gast Heights Development Company, for judgment on the pleadings, and the court having examined said pleadings, and being fully advised in the premises, finds that the defendant * * * Midland Savings & Loan Association has answered in said cause, and has set forth that it claims a mortgage on the premises executed and delivered to said defendant on or about the 1st day of October, 1910, being originally for the sum of $1,400.00 with interest thereon at the rate of 10 per cent. per annum * * * that said mortgage is a first lien upon said premises, and that same is payable in monthly installments."

The court then found further that the defendant, Ben. R. Farrar, had given to the development company a mortgage on the same lots to secure the purchase money, amounting to $1,100, but that such mortgage lien was junior and subject to the loan company's first lien; but that, as the development company had become subrogated to the rights of the loan company, it was entitled to foreclosure of its second lien, subject to the loan company's first lien, whereupon the judgment further recites as follows:

"Wherefore it is ordered, adjudged and decreed that said defendant, Gast Heights Development Company, have judgment against the defendant Ben R. Farrar for the sum of $1,100.00 with interest thereon from the 13th day of April, 1910, at the rate of 8%, compounded semi-annually, together with $75.00 as attorney's fees for foreclosure of said mortgage, and that said judgment be and the same is hereby declared a lien upon said premises * * * but junior and inferior to the lien of the Midland Savings & Loan Association, and that said defendant Gast Heights Development Company is entitled to have said mortgage foreclosed and said premises sold by the sheriff of Oklahoma county, Oklahoma, subject, however, to the first lien of the Midland Savings & Loan Association, for the purpose of paying said judgment."

A portion of the above decree and judgment should be borne in mind, to wit:

"Midland Savings & Loan Association has answered in said cause, and has set forth that it claims a mortgage on said premises for the sum of $1,400.00, with interest thereon at the rate of 10% per annum * * * that said mortgage is a first lien upon said premises and the same is payable in monthly installments."

The foregoing portion of the decree and judgment constitutes both a finding of fact and a decree upon the fact found. It is a finding of fact in that it finds that the loan company, in its cross-action, had claimed only to have a mortgage originally for $1,400, with interest at 10 per cent. per annum, and asked that such mortgage be decreed a first lien on the property; it is a decree in that it gave to the loan company the lien it had asked for, viz., a first lien to secure a mortgage, originally for $1,400, with interest at 10 per cent. per annum. It is a finding as to just what the loan company asked for in its cross-action, and a decree in that it gave the loan company just what it did ask for.

This being what the loan company asked for in its cross-action, and it having accepted and acquiesced in what it received in the decree, it must look to such decree in the former suit for its rights in the present suit. The court did not decree to the loan company a first lien to secure its building and loan contract with Farrar, according to the terms thereof, nor a first lien to secure the payment of its mortgage according to the terms of such mortgage, but decreed to it a first lien to secure a mortgage originally for $1,400, with interest at 10 per cent. per annum. Therefore the loan company will not be given in the **present case** more than it was given a **lien** for in the **former case.**

Likewise the development company, in its cross-action in the former case, acknowledged the priority of the very lien which the court found as a fact that the loan company had asked for, namely, a first lien to secure a mortgage originally for $1,400, with interest at 10 per cent. per annum, and asked that its second lien be foreclosed subject to the loan company's first lien. It, the development company, received judgment as prayed for in its cross-action, foreclosing its second lien subject to the loan company's first lien, and accepted the sheriff's deed subject to said first lien. It was likewise bound by the former judgment, said judgment having been rendered in response to its prayer.

Therefore that decree and judgment fixed the status of the two companies with refer-

ence to the loan. The loan company was entitled, in this action, to $1,400, with interest at 10 per cent. per annum, payable in monthly installments, such loan to be credited with all the payments that had been made and the development company became obligated, under the decree which it had procured, to satisfy the lien which such decree had given to the loan company. Now, if the development company had paid an amount in excess of $1,400, with interest at 10 per cent. per annum, less all proper credits, then it had made usurious payments and was entitled to recover for usury. Its rights to recover usury, as we view the case, depended upon whether it had made usurious payments on the lien decreed in the former judgment, and not upon the question whether it should recover usury under an assignment of Farrar's right to recover usury. It appears that after this action was begun Farrar assigned his right to sue for usury to the development company, and the development company sought to recover usury on the strength of such assignment, but, as we view the case, Farrar had no right to recover usury; he had paid no usury, he had paid nothing. The right to recover usury and attorney's fees given by sections 1005, 1006, Rev. Laws 1910, is to the party who pays usury, and not to the party who might have had the right to recover if he had made the usurious payments.

When the loan company brought this action its rights to recover for the money loaned to Farrar were determinable only by the rights which it had asked for and which were given to it upon its cross-action in the former suit, and when the development company asked for usury in the present case its rights to recover same were determinable upon the fact that it had made usurious payments on the lien created against the lots in the former suit.

The trial court in the case at bar found, and, as we view the record, properly found, that the original loan was $1,400, but that $23 had been deducted from same and that the draft sent to the borrower was for only $1,377, and that the development company was entitled to credit for said $23 held back by the loan company. Therefore the development company, or, more correctly, the lots in question, were bound for the original sum of $1,400, with interest at 10 per cent. per annum, but were entitled to credit for the $23 withheld by the loan company, and for the $497.06 found to have been paid at the time of the former suit; and entitled to a credit for all subsequent payments which had been made at the time of filing this suit. The development company alleged that it had paid $1,427.06. The trial court found as a fact that it had paid the sum of $1,427.06 on the loan. The court also found that the sum of $23 had been retained by the loan company from the original $1,400, and that the loan company had sent a draft to the borrower for only $1,377, and that the development company was entitled to credit for said $23 as a payment made on the original loan of $1,400. Adding the $23 to the $1,427.06 alleged and found to have been paid, makes a total of $1,450.06, or only $50.06 interest paid on the $1,400 from October, 1910, to August, 1915. Now, the interest on the $1,377 at 10 per cent. per annum from October, 1910, to March 22, 1911, the date on which the first payment of $60 was made, would amount to more than $50.06, more than was alleged to have been paid by the development company. It is obvious, therefore, that the payments made by the development company, amounting to $1,427.06, plus the $23 credit aforesaid, had not extinguished the lien which the decree in the former suit created against the lots, namely, a lien for $1,400, with interest at 10 per cent. per annum, less the credits for payments which had been made at that time. This being true the development company had not paid any usurious interest. It had not satisfied the lien against the lots, which lien it had asked for and acceded to in the former suit. It was not entitled to recover for usury paid until it had made usurious payments. Section 1005, Rev. Laws 1910. It could not claim usurious payments until it had satisfied the lien which had been decreed against the lots in the former case. Therefore the trial court was in error in rendering judgment for usury. Likewise the court erred in giving judgment to the development company for attorney's fees. Section 1006, Rev. Laws 1910, authorizes recovery for attorney's fees by the prevailing party—that is, by the party who has paid usury—if it be shown that he has done so, or by the party sued if it appears that no usury has been paid.

The loan company was entitled to recover on its lien the sum of $1,400, with interest at 10 per cent. per annum, plus the sum of $71.52 found to have been paid out by it for taxes, insurance, etc., since this suit was filed, less all proper credits, which consisted of the $1,427.06 found to have been paid by the development company and the $23 retained out of the loan as aforesaid by the loan company and entitled to judgment foreclosing its lien on the lots to satisfy the balance due thereon, and entitled to such attorney's fees, not less than $10, as may be adjudged by the court.

The cause is therefore remanded to the trial court, with directions to recast the judgment to conform to the conclusions herein reached.

PITCHFORD, McNEILL, ELTING, and NICHOLSON, JJ., concur.