DAVID BARNES *et al.*, Plaintiffs in Error, *v.* SPIER WHITAKER,
Defendant in Error.

### ERROR TO ROCK ISLAND.

*A plea which properly avers the making of a note in Iowa, and that it was tainted with usury by the laws of that State where the parties to it resided, and with reference to the laws of which State it was executed, is good. But if the penalty for usury, by the laws of Iowa, goes to the school fund, that part of the law will not be executed.*

DEFENDANT in error filed his declaration in assumpsit, against plaintiffs in error, containing a special count upon a promissory note, made at Davenport, Iowa, by plaintiffs in error and one Bailey to defendant in error, dated March 11th, A. D. 1857, for $2,165, payable one hundred and seventeen days after date, at Davenport, Iowa, with a penalty of two per cent. per month after due, if not paid; and also the common counts.

The plaintiffs in error plead to the declaration,

1.    The general issue.

2.    As to the $165, and as to the penalty in note mentioned: that the note mentioned in the declaration was made at Davenport, in the State of Iowa, and was made payable there, with reference to the laws of that State; setting up *in hæc verba* the statute of Iowa regulating interest; averring that, in compliance with its terms, said statute was published, etc., and became of force; that before the making of the note in the declaration, Whitaker agreed to lend Barnes $2,000, for one hundred and seventeen days—that for the loan of the $2,000 for the time aforesaid, Barnes agreed to pay $165, and two per cent. per month on the $2,165, after due; and that it was further agreed, that Barnes, Webber and Bailey should execute their note for $2,165, with two per cent. per month after due, as a penalty. That in pursuance of the above corrupt agreement, defendants in error and said Bailey did execute the note declared upon, and that Whitaker did lend Barnes the $2,000; that as to the $165, and the penalty, the note was and is void.

3.    Same as second, but goes only to the $165.

4.    Set-off.

5.    Payment.

The defendant in error filed his general demurrer to the second and third pleas, and joined issue as to the first, fourth and fifth.

Demurrer to second and third pleas sustained by the court. Plaintiffs in error withdrew first, fourth and fifth pleas, and judgment is entered for defendant in error by default; the clerk being ordered to assess the damages, reported the same at

$2,252.44, which was approved by the court, and final judgment entered.

The errors assigned are:

1st. That the court erred in sustaining the demurrer to the second and third pleas.

2nd. That the court erred in approving the assessment.

3rd. That the court erred in rendering judgment for the plaintiff.

4th. That the court erred in not rendering judgment for the defendant.

E. T. WELLS, for Plaintiffs in Error.

WILKINSON & PLEASANTS, for Defendant in Error.

CATON, C. J. The second plea, is in bar of the per centage agreed to be paid, after the money became due, in case it was not promptly paid, as well as the usurious interest included in the note itself, and seems to be disposed of by the case of *Lawrence* v. *Cowles*, 13 Ill. R. 577, which case is supported by the uniform current of decisions, and must be adhered to, although were it a new question, we might hesitate before arriving at the same conclusion. The demurrer to that plea was properly sustained.

The third plea, is in bar of only one hundred and sixty-five dollars, which it avers, was included in the note for the loan and forbearance of two thousand dollars for one hundred and seventeen days. That plea avers, with all necessary form and circumstance, that the note was made in the State of Iowa, where the parties resided, and with reference to the laws of that State ; that the defendant borrowed of the plaintiffs two thousand dollars for one hundred and seventeen days, and that it was corruptly agreed between the parties, that the defendant should give the plaintiffs for the loan and forbearance of that money, for that time, one hundred and sixty-five dollars, and that in pursuance of such corrupt agreement the note was made, including the one hundred and sixty-five dollars. The plea then recites the statute of Iowa on the subject of interest, by the second section of which parties are allowed to agree in writing to receive ten per cent. interest per annum for the forbearance of money. The fourth section forbids the taking of a greater rate of interest than by that statute allowed. The fifth section, is as follows : " If it shall be ascertained in any suit brought on any contract that a rate of interest has been contracted for greater than is authorized by this act, either directly or indirectly, in money, property or other valuable thing, the same

shall work a forfeiture of ten per cent. per annum upon the amount of such contract to the school fund of the county in which the suit is brought, and the plaintiff shall have judgment for the principal sum without either interest or costs.   The court in which said suit is prosecuted, shall render judgment for the amount of interest forfeited as aforesaid against the defendant, in favor of the State of Iowa, for the use of the school fund of said county, whether the said suit is contested or not, and in all cases where the unlawful interest is not apparent on the contract or writing, the person contracting to pay the unlawful interest, shall be a competent witness to prove that the contract is usurious ; and in no case when unlawful interest is contracted for, shall the plaintiff have judgment for more than the principal sum, whether the unlawful interest be incorporated with the principal or not."

The note on which this action was brought was made under this law, and was expected and intended that it should be subject to its influence.   The parties understood and knew, that it fixed the measure of their rights and liabilities.   When the plaintiff took this note couched in terms which are stated in this record, he knew that the legal effect of it, so far as the maker was concerned, was precisely the same as if it had expressly stipulated that he should only be entitled at maturity to the principal sum loaned.   So the law dictated, and such the parties knew to be its legal effect.   If such was the nature and meaning of the contract in Iowa, it must be the same in Illinois and everywhere, and all courts are bound to enforce the contract according to its legal effect.   We must enforce the obligation which the contract created between the parties.   Iowa had the right to make such laws as she pleased, as to the meaning and effect of certain contracts made within her borders, and it is not for the legal tribunals to question their policy, but it is their duty to enforce them as they are made, by the law and the parties.   The reason of this is simply because the law is so, and it ought to be so.   Otherwise a contract would be one thing in one jurisdiction and another in another jurisdiction.   Were it otherwise, the rights and liabilities under a contract would depend, not upon its legal efficacy, but upon the place where it is enforced. Can it be that this defendant was legally bound to pay one hundred and sixty-five dollars more on one side of the Mississippi river, than on the other ?   If that be so, a new law of comity has lately arisen among these States.   We do not so understand it.   The law where the contract was made declares that " in no case where unlawful interest is contracted for, shall the plaintiff have judgment for more than the principal sum, whether the unlawful interest be incorporated with the principal or not."

Barnes et al. *v.* Whitaker.

Here unlawful interest was contracted for, and the interest was incorporated with the principal, and the law in effect says that the interest shall be expunged from the note, and it shall be read and adjudged the same as if the principal sum alone had been expressed in dollars and cents, and this law entering into and forming a part of the contract goes with it, wherever it goes. It is admitted that such would be the effect of this law, if it had declared that the plaintiff should have judgment, for nothing. How much more so in common sense and common reason where it allows him to take judgment for the principal sum loaned. The distinction in the two cases is not only without reason but is against all reason and all sound law and the philosophy of law.

So much for the influence of this law upon the contract itself, and the rights and liabilities of the parties as between themselves, arising under it. With the penalties imposed by the law upon the usurers for their violation of it, we have nothing to do. That is a matter between the State of Iowa and her citizens. We cannot punish her citizens for violating the laws to which they owe allegiance. We cannot render judgment in favor of that State for the benefit of her school funds for the penalty or forfeiture of ten per cent. per annum, which this law imposes. We have no jurisdiction to vindicate the violated majesty of her laws, as was held in *Shuman* v. *Gassett*, 4 Gilm. R. 521. That task must be left to her own tribunals. We can enforce contracts made there according to her laws. We can read them in the light of her statutes, because in that light were they written. But it is only with the parties to the contract and the cause, that we have to do. The State is a third party which may appear in her own courts and claim the penalty imposed by her offended laws, but in our courts she is a stranger, except as the law maker. When she descends to a lower sphere and seeks to become a party to the controversy, she must look to her own courts as her proper theatre.

The demurrer to the third plea must be overruled, and because it was sustained, the judgment must be reversed and the cause remanded.

*Judgment reversed.*