THE GREAT WESTERN MACHINERY COMPANY, *Appellee,*
v. J. C. SMITH et al., *Appellants.*

· No. 17,522.

SYLLABUS BY THE COURT.

1. PENAL STATUTE — *Foreign State* — *When Enforceable in Kansas.* The rule that a penal statute will not be enforced outside the territorial jurisdiction of the legislature enacting it applies only to such statutes as are entirely penal, their sole purpose being to inflict punishment for the violation of a law, for the public benefit, and not to those which are in part compensatory, the violator being required to make good to an individual a possible loss having some connection with his default.

2. ——— *Same.* A statute requiring a corporation to file an annual statement showing its financial condition, and making its officers individually liable for its debts in case of default, is not purely penal.

3. ——— *Same.* The enforceability of such a statute in another state is not affected by the fact that the courts of the state enacting it have characterized it as penal in connection with the rule of strict construction and with the application of a statute of limitations upon actions to recover a penalty.

Appeal from Saline district court. Opinion filed June 8, 1912. Affirmed.

*David Ritchie,* for the appellants.

*Burch, Litowich & Mason,* for the appellee; *Bartels & Silverstein,* of counsel.

The opinion of the court was delivered by

MASON, J.: The Great Western Machinery Company brought action against J. C. Smith and D. E. Berger. The petition alleged these facts: On April 1, 1909, the plaintiff sold goods to the Abe Lincoln Mines and Milling company, a Colorado corporation, for which payment has not been made. By a Colorado statute (Laws of Colo. 1901, ch. 52, § 11, Rev. Stat. of Colo., 1908, § 911) all such corporations were required within sixty days after the first day of January in each year to file with the secretary of state a report showing among the other matters the names of its officers and directors and its financial condition. Such a report was not filed in 1909 until April 17. The defendants were at the time directors of the corporation. The statute further provided that if a corporation failed to file such a report within the time prescribed, all its officers and directors should be individually liable for all its debts contracted during the preceding year and until the report should be filed. Upon these grounds the plaintiff asked judgment against the defendants for the amount of its claim against the corporation. A demurrer to the petition was overruled, and the defendants appeal.

The defendants maintain that the present action will not lie in this state, because the statute invoked is penal in its nature, and for that reason a liability under it can not be enforced elsewhere than in Colorado. The statute is beyond doubt penal in a certain sense. And it has often been broadly stated that a penal statute has no extra-territorial force, and will not be executed by the courts of another state or country. A distinction has been made, however, between statutes which are entirely penal, their sole purpose being to punish a violation of the law for the public benefit, and those which are in part compensatory, the violator being required to make good to an individual a possible loss having some connection with his default. It is univer-

sally held that statutes of the former character can be executed only by the sovereignty enacting them.   But by the weight of later authority, and as we think by the better reason, actions may be maintained anywhere to enforce the liability to an individual, created by statutes of the latter kind.   Cases on both sides of the question are collected in 1 Cook on Corporations, 6th ed., § 223, pp. 586-588; and in 3 Clark & Marshall on Private Corporations, § 833*p*, where the authors say:

"It is a general principle of international law that 'the courts of no country execute the penal laws of another,' and this is true as between the different states. Many of the courts have held that this principle applies to statutes of a state imposing upon the directors of a corporation personal liability for its debts as a penalty for failing to file a report of the company's condition, or to do other acts required of them by law, or for doing acts prohibited; that such statutes are penal statutes, within this principle, and that they will not be enforced in the courts of other states.   The more recent cases, however, show that this doctrine is erroneous and can not be sustained; that the rule of international law that the penal laws of one state or country will not be enforced in another state or country applies only to penal laws in the strict sense, that. is, laws imposing a punishment, pecuniary or otherwise, for offenses against the state; and that a statute imposing upon directors a liability for corporate debts is not a penal law in this sense."

The leading case on the subject is *Huntington v. Attrill*, 146 U. S. 657, where it was said:

"It will be necessary, in the first place, to consider the true scope and meaning of the fundamental maxim of international law, stated by Chief Justice Marshall in the fewest possible words: 'The courts of no country execute the penal laws of another.'   *The Antelope*, 10 Wheat. 66, 123.   In interpreting this maxim, there is danger of being misled by the different shades of meaning allowed to the word 'penal' in our language.   In the municipal law of England and America, the words 'penal' and 'penalty' have been used in various senses. Strictly and primarily, they denote punishment, whether

corporal or pecuniary, imposed and enforced by the state, for a crime or offense against its laws. . . . But they are also commonly used as including any extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, not limited to the damages suffered. . . . The question whether a statute of one state, which in some aspects may be called penal, is a penal law in the international sense, so that it can not be enforced in the courts of another state, depends upon the question whether its purpose is to punish an offence against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act. . . . The provision of the statute of New York, now in question, making the officers of a corporation, who sign and record a false certificate of the amount of its capital stock, liable for all its debts, is in no sense a criminal or *quasi* criminal law. . . . As the statute imposes a burdensome liability on the officers for their wrongful act, it may well be considered penal, in the sense that it should be strictly construed. But as it gives a civil remedy, at the private suit of the creditor only, and measured by the amount of his debt, it is as to him clearly remedial. To maintain such a suit is not to administer a punishment imposed upon an offender against the state, but simply to enforce a private right secured under its laws to an individual. We can see no just ground, on principle, for holding such a statute to be a penal law, in the sense that it can not be enforced in a foreign state or country." (pp. 666-676.)

In that case a judgment was first obtained in New York, and action was brought in Maryland upon that judgment. The fact that the action was upon a judgment was not determinative of the matter, however, because a judgment founded upon a strictly penal statute is not within the protection of the full faith and credit clause of the federal constitution. (*Wisconsin v. Pelican Ins. Co.*, 127 U. S. 265.) Since the decision of the *Huntington-Attrill* case, its doctrine, which had already been announced in England (*Huntington v. Attrill*, Appeal Cases, Law Rep. 1893, 150) has been generally accepted in this country (Minor, Conflict of

Laws, p. 22; 1 Wharton on the Conflict of Laws, 3d ed., p. 18; 72 Central Law Journal, 245-251; *Farr v. Briggs' Estate*, 72 Vt. 225, 47 Atl. 793, 82 Am. St. Rep. 930; *Nebraska National Bank v. Walsh*, 68 Ark. 433, 59 S. W. 952, 82 Am. St. Rep. 301). A recent case to the contrary is *Commercial Nat. Bank, Appellant, v. Kirk*, 222 Pa. St. 567, 71 Atl. 1085, 128 Am. St. Rep. 823. Obviously the statute under consideration was enacted with an especial view to the protection of creditors. No other penalty was provided for the failure of a corporation to file an annual statement. While in a particular instance a creditor might not have suffered actual loss from such failure, the absence of the statement might easily be the occasion of his granting credit or forbearing to sue. The statute makes the officer who fails to give the creditor information to which he is entitled a surety for the corporation. The creditor receives no more than the amount of his debt, from one whose misconduct has a natural connection with his being the holder of a claim which he finds difficulty in enforcing against the principal.

No action can be maintained in Kansas upon the statute of another state authorizing the recovery of punitive damages only; or of a lump sum in which punitive and compensatory damages are inseparably blended. (*Dale v. Railroad Co.*, 57 Kan. 601, 47 Pac. 521; *Rochester v. Express Co.*, ante, p. 164, 123 Pac. 729.) Although an injured individual is empowered to collect punitive damages, the purpose of the law in authorizing them is entirely to inflict punishment, and not in any degree to compensate plaintiff's loss, every element of which is covered by the allowance of actual damages. An action for punitive damages is in this respect analogous to one authorized to be brought by an individual to recover a penalty imposed by statute for an offense against the law, which is regarded as purely penal, although the informer or prosecutor is

given the benefit of the recovery in whole or in part. (*Huntington v. Attrill,* 146 U. S. 657, 673.)

The defendants urge that the statute in question must be regarded as penal, because the Colorado courts have declared it to be so. It is true that the supreme court of Colorado has held an earlier form of the statute to be penal, in the sense that the legislature could take away a right of recovery already accrued under it without impairing the obligation of a contract (*Gregory v. German Bank of Denver,* 3 Colo. 332) ; and the Colorado court of appeals has held it to be penal in the sense that an action upon it must be brought within the time fixed for actions "for any penalty or forfeiture of any penal statute" (*Hazelton v. Porter,* 17 Colo. App. 1, 3, 67 Pac. 170). Also, the supreme court has held the present statute to be so far penal as rightly to be subjected to a strict construction. (*Steck v. Prentice,* 43 Colo. 17, 95 Pac. 552.) But it does not follow that the Colorado courts regard the statute as strictly penal in such sense as to render it enforceable only in that state. Moreover, while decisions of the Colorado court of last resort will necessarily be followed elsewhere so far as they determine the true meaning of the statute, the question whether the statute, as interpreted by the court, is penal in such sense as to deny it all extra-territorial operation, is not one of local, but of general or international law. (*Leyner Engineering Works v. Kempner,* 163 Fed. 605, 607, 608; *Huntington v. Attrill,* Appeal Cases, Law Rep. 1893, 150.)

"The test is not by what name the statute is called by the legislature or the courts of the State in which it was passed, but whether it appears to the tribunal which is called upon to enforce it to be, in its essential character and effect, a punishment of an offence against the public, or a grant of a civil right to a private person." (*Huntington v. Attrill,* 146 U. S. 657, 683.)

The judgment is affirmed.