## GARDNER et al. v. RUMSEY.

No. 9932—Opinion Filed March 15, 1921.

(Syllabus.)

1. **Parties — Misjoinder — Separate Interests.**

In an action at law, two or more persons having separate causes of action against the same defendant, though arising out of the

same transaction, cannot unite; nor can several plaintiffs in one complaint demand several distinct matters of relief; nor can they enforce joint and separate demands against the same defendant.

**2. Corporations—Personal Liability of Officers—Statutory Penalties of Another State—Enforceability.**

The statutes of Arkansas provide that before any corporation shall commence business, the president and directors thereof shall file their articles of association, and also certificate, setting forth the purposes for which such corporation is formed, the amount of its capital stock, the amount actually paid in, and the names of its stockholders and the number of shares by each respectively owned, with the county clerk of the county in which the corporation is to have its principal place of business, etc. And provide, further, that if the president, directors, or secretary of any such corporation shall intentionally neglect or refuse to comply with the provisions of this act, and to perform the duties therein required of them respectively, such of them as so neglect or refuse shall be jointly and severally liable in an action for all the debts of such corporation contracted during the period of any such neglect or refusal. Held: First. That the liability against the officer failing to comply with the terms of the statute is in effect penal. Second. That an action for the liability created by reason of the false certificate, filed by such officer, cannot be maintained in this state.

Johnson, McNeill, and Nicholson, JJ., dissenting.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by A. L. Gardner, doing business as A. L. Gardner & Company, and others, against Joseph F. Rumsey to enforce liability of officer of corporation to its creditors. Demurrer to petition sustained, and plaintiffs bring error. Affirmed.

Lemuel H. Doty and James B. McDonough, for plaintiffs in error.

B. O. Young and Ames, Chambers, Lowe & Richardson, for defendant in error.

PITCHFORD, J. This is an appeal from a judgment of the district court of Oklahoma county, sustaining a demurrer by the defendant to the plaintiffs' petition. The causes of action set forth in the petition are based upon the statute of the state of Arkansas creating a liability in favor of creditors against officers of an Arkansas corporation who make a false certificate.

By virtue of the statute, the organizers of a corporation, in Arkansas, are required to state, under oath, the amount of capital stock actually paid in. The directors and organizers are required to make affidavit to the truthfulness of the certificate and report, and if any officer of the corporation makes a false affidavit as to the amount paid in, said person making the false affidavit is liable to any creditor of the corporation for the amount of the debt against said corporation.

It was alleged in the petition that W. C. Hathaway, Joseph F. Rumsey, and T. P. Edwards associated themselves together as a body politic and corporate and to be known as the Mansfield Cotton Oil Company. That the amount of capital stock was to be $30,000. That defendant, Rumsey, subscribed for 360 shares of the capital stock, same amounting to $9,000. That Edwards and Hathaway subscribed for the balance. That each of the subscribers signed an affidavit showing that the full amount of the capital stock had actually been paid in, but said sums were not paid and never had been paid, and the affidavit and oath of the said Rumsey, in the organization of the corporation, were untrue and false.

The plaintiffs, A. L. Gardner, J. M. Marshall, and Proctor & Gamble Company, joined in an action against the defendant; the plaintiff Gardner claiming that the Mansfield Cotton Oil Company became indebted to him in the sum of $5,437.50; the plaintiff Marshall claiming an indebtedness against the corporation for $6,000, and Proctor & Gamble Company claiming that the corporation was indebted to it $980. These debts were created after the organization of the corporation. The plaintiffs contend that, by reason of the untrue and false affidavit of the defendant, he became indebted to each of them for the amounts set forth above.

To the petition of the plaintiffs, the defendant demurred upon the following grounds: That several causes of action were improperly joined, and that the petition failed to state facts sufficient to constitute a cause of action. The court below sustained the demurrer upon both grounds. Plaintiffs refused to plead further and elected to stand upon their petition. The prayer of the petition was that plaintiffs have judgment against the defendant individually and separately and personally for the sums of money above set forth, together with interest thereon from the date that each became due.

We are here confronted with this proposition: Can three separate and distinct plaintiffs join in one petition, and in one action three separate and distinct claims, one in behalf of each plaintiff, against the same defendant?

Under paragraph 5, section 4740, Rev. Laws 1910, the defendant may demur to the petition when it appears on its face: "That

several causes of action are improperly joined."

It is the contention of the plaintiffs that the liability of the defendant arises out of the alleged false affidavit, that the claims arose out of the same transaction, and that if they did arise out of the same transaction, a liability was created in favor of each of the plaintiffs, and that under the law the different causes of action may be included in the same petition, and that the remedy of the defendant was not to demur, but was a motion to strike out the names of at least two of the plaintiffs if he desired to raise the question of misjoinder of parties, and that if this motion had been made, then the plaintiffs had their remedy under section 4743, Rev. Laws 1910.

The above section provides as follows:

"When a demurrer is sustained, on the ground of misjoinder of several causes of action, the court, on motion of the plaintiff, shall allow him, with or without costs, in its discretion, to file several petitions, each including such of said causes of action as might have been joined; and an action shall be docketed for each of said petitions, and the same shall be proceeded in without further service."

Here we have three lawsuits in one, maintained by three plaintiffs without unity of interest stated in the petition, requiring the proof and defense of three causes of action, upon three different debts created at three different times, upon three different transactions in favor of three different plaintiffs, and which would require three verdicts and three separate judgments. While this section gives the plaintiffs the right to have the causes of action separated, this they did not seek to do, no doubt realizing that this course would have been futile. For when the demurrer was also sustained on the ground that no cause of action was' stated, they could have accomplished nothing by having the causes separately stated, as they were, at that time, informed by the court that they had no cause of action. What the statutes authorize is the joinder of several causes of action in the same petition in behalf of the same plaintiff, or the same joint plaintiffs having unity of interest where they arise out of the same transaction.

Under section 4738, supra, the causes of action so united must all belong to one of these classes, and must affect all the parties to the action, except in actions to enforce mortgages or other liens.

Gardner's cause of action is wholly personal to himself, and in no wise affects Marshall or Proctor & Gamble Company. The cause of action of Proctor & Gamble Com-

pany in no manner affects either of the other plaintiffs, and the same is true of Marshall's cause of action. Therefore, since the several causes of action do not affect all the parties, but affect each plaintiff separately and distinctly, although the several causes of action might have arisen out of the same transaction, the claims constituted different transactions and were improperly joined.

In Jeffers v. Forbes, 28 Kan. 122, Mr. Justice Brewer, after considering the statutes of that state, and quoting from Tate v. Railroad Co., 10 Ind. 174, said:

"Two or more persons, having separate causes of action against the same defendant, though arising out of the same transaction, cannot unite; nor can several plaintiffs in one complaint demand several distinct matters of relief; nor can they enforce joint and separate demands against the same defendants."

In Swenson v. Moline Plow Co., 14 Kan. 297, the syllabus is as follows:

"Where S. executed to A. two promissory notes, and a mortgage on real estate to secure the payment of the notes, and A. afterwards assigned one of the notes to M., held, that A. and M. cannot sue jointly as plaintiffs on the notes and mortgage, but each has his separate action."

In St. Louis & S. F. R. Co. v. Dickerson et al., 29 Okla. 386, 118 Pac. 140, this court said in the third paragraph of the syllabus:

"Where two or more persons have a separate interest in property and sustain a separate damage thereto, they must sue separately, and cannot join in the same action, even though their several injuries were caused by the same act."

In Leavenworth N. & S. R. Co. v. Wilkins et al., 45 Kan. 674, the third paragraph of the syllabus is as follows:

"In the trial of an action on an appeal from the award of commissioners, in a railroad right of way case, a cause of action for injuries to lands owned by M. W. by reason of the appropriation of the right of way cannot be joined with an action for injuries to lands owned by M. W. and S. W. jointly. In such a case, it is error to overrule a demurrer to the petition, which avers the misjoinder as the reason thereof."

We are next to inquire, did the court commit error in sustaining the demurrer on the ground that the petition failed to state a cause of action? In answering this question, it is first necessary to consider whether or not the statute of Arkansas, creating a liability for the false affidavit, is in the nature of a penal statute, or is only remedial.

Plaintiffs argue in their brief that the statute simply gives a cause of action to an

injured creditor, giving a creditor a right to recover an actual debt against an officer who has made a false affidavit with reference to the funds and assets of the corporation, and that the liability is not a penalty, and cite the case of Nebraska Nat. Bank v. Walsh, 68 Ark. 433, wherein the Arkansas statute under discussion was involved. The action had been instituted in the Arkansas court under the statute, and the plea of limitation was interposed on the ground that the liability imposed by the state was in the nature of a penalty. The Supreme Court of Arkansas, construing the statute, held that the same created a statutory liability, and not a penalty.

We are also cited to the opinion of the United States Supreme Court in the case of Huntington v. Attrill, 146 U. S. 657, 36 L. Ed. 1123. In the case last cited, a bill in equity was filed in the circuit court of Baltimore city, by Collis P. Huntington, a resident of New York, against the Equitable Gas Light Company of Baltimore, a corporation of Maryland, and against Henry Y. Attrill, his wife, and three daughters, all residents of Canada, to set aside a transfer of stock in that company, made by him for their benefit and in fraud of his creditors, and to charge that stock with the payment of a judgment recovered by the plaintiff against him in the state of New York, upon his liability as a director in a New York corporation, under the statute of New York of 1875, chap. 611, being practically the same as the Arkansas statute involved in the instant case.

A demurrer was filed to the petition on the ground that it showed that the plaintiff's claim was for the recovery of the penalty against Attrill arising under a statute of the state of New York, and because it did not state a case which entitled the plaintiff to any relief in a court of equity in the state of Maryland. The circuit court of Baltimore city overruled the demurrer.

On appeal to the Court of Appeals of the state of Maryland, the order was reversed, and the bill dismissed. The ground most prominently discussed in the opinion of the Maryland court, 14 Am. St. Rep. 344, delivered by Judge Bryan, was that the liability imposed by section 21 of the statute of New York upon officers of a corporation, making a false certificate of its condition, was for all its debts, without inquiring whether a creditor had been deceived and induced by deception to lend his money or to give credit, or whether he had incurred loss to any extent by the inability of the corporation to pay, and without limiting the recovery to the amount of loss sustained, and was intended as a punishment for doing any of the forbidden acts, and was, therefore, a penalty, which could not be enforced in the state of Maryland.

On a writ of error to the Court of Appeals of Maryland, Mr. Chief Justice Gray, delivering the opinion, said:

"If a suit on the original liability under the statute of one state is brought in a court of another state, the Constitution and laws of the United States have not authorized its decision upon such a question to be reviewed by this court. New York L. Ins. Co. v. Hendren, 92 U. S. 286 (23:709); Roth v. Ehman, 107 U. S. 319 (27:499). But if the original liability has passed into judgment in one state, the courts of another state, when asked to enforce it, are bound by the Constitution and laws of the United States to give full faith and credit to that judgment, and if they do not, their decision, as said at the outset of this opinion, may be reviewed and reversed by this court on writ of error. The essential nature and real foundation of a cause of action, indeed, are not changed by recovering judgment upon it. This was directly adjudged in Wisconsin v. Pelican Ins. Co., above cited. The difference is only in the appellate jurisdiction of this court in the one case or in the other.

"If a suit to enforce a judgment rendered in one state, and which has not changed the essential nature of the liability, is brought in the courts of another state, this court, in order to determine, on writ of error, whether the highest court of the latter state has given full faith and credit to the judgment, must determine for itself whether the original cause of action is penal in the international sense. The case, in this regard, is analogous to one rising under the clause of the Constitution which forbids a state to pass any law impairing the obligation of contracts, in which if the highest court of the state decides nothing but the original construction and obligation of a contract, this court has no jurisdiction to review its decision; but if the state court gives effect to a subsequent law, which is impinged as impairing the obligation of a contract, this court has power, in order to determine whether any contract has been impaired, to decide for itself what the true construction of the contract is. New Orleans Waterworks Co. v. Louisiana Sugar Ref. Co., 125 U. S. 18, 38 (31:607, 614). So if the state court, in an action to enforce the original liability under the law of another state, passes upon the nature of that liability and nothing else, this court cannot review its decision; but if the state court declines to give full faith and credit to a judgment of another state, because of its opinion as to the nature of the cause of action on which the judgment was recovered, this court, in determining whether full faith and credit have been given to that judgment, must decide for itself the nature of the original liability.

"Whether the Court of Appeals of Maryland gave full faith and credit to the judgment recovered by this plaintiff in New York depends upon the true construction of the provisions of the Constitution and of the act of Congress upon that subject."

The judgment of the Court of Appeals was reversed and remanded.

Mr. Justice Lamar and Mr. Justice Shiras took no part in the decision of the case. Chief Justice Fuller filed a dissenting opinion, from which we quote the following:

"It was for the Maryland court to determine whether such enforcement would either directly or indirectly involve the execution of the penal laws of another state, and although it might have been mistaken in the conclusion arrived at, such error does not give this court jurisdiction to review its judgment. State courts do not adjudicate in the matter of the enforceability of statutory delicts at their peril.

"In my opinion, the Maryland court gave all the force and effect to the judgment in question to which it was entitled. The pleadings were necessarily confined to the equities arising out of the original cause of action, and full faith and credit were accorded to the judgment as matters of evidence. Its effect as such could not render it incompetent for the state court to decide for itself the question which was raised upon the record. As there presented, it was for that court to say whether the obligation on Attrill to pay the sum for which the judgment was given was an obligation which the Maryland court was bound to recognize as proper foundation for relief in equity in respect to the transfer of April, 1882.

"I think that no federal question was involved, and that the writ of error ought to be dismissed."

In the Attrill Case, supra, it was held by Mr. Justice Gray that the New York statute was not a penalty in the international sense, but in reaching this conclusion the court went behind the New York judgment and based the jurisdiction of the United States court upon the full credit clause of the Constitution. The Maryland court had also gone behind the New York judgment, and had decided that the liability created by the statute imposed a penalty, and for that reason the action could not be maintained in Maryland; the Maryland court holding that each state must decide for itself whether or not the act imposed a penalty.

In the dissenting opinion by Mr. Chief Justice Fuller, the same position is taken as was taken by the Maryland court. The conclusion to be drawn from Mr. Justice Gray's decision is that the United States court had the power to say whether or not the liability was penal or contractual, and

if contractual, then the Maryland courts were bound to give full faith and credit to the New York judgment.

In the case of Wellman v. Mead (Vt.) 107 Atl. 396, an action was filed in Vermont to recover damages for the death of plaintiff's intestate, claimed to have been caused by negligence of the defendant. The action was brought under the Revised Laws of Massachusetts, ch. 171, parag. 2, providing that:

"If a person or corporation by his or its negligence, or by the gross negligence of his or its agents or servants, while engaged in his or its business, causes the death of a person who is in the exercise of due care and not in his or its employment or service, he or it shall be liable in damages in the sum of not less than five hundred nor more than five thousand dollars to be assessed with reference to the degree of his or its culpability or that of his or its agents or servants, to be recovered in an action of tort, commenced within one year after the injury which caused the death, by the executor or administrator of the deceased, one-half thereof to the use of the widow and one-half to the use of the children of the deceased; or, if there are no children, the whole to the use of the widow; or, if there is no widow, the whole to the use of the next of kin."

It was held by the Vermont court that the statute was not penal, evidently for the reason that the action was for a breach of an implied contract; that is, an action for damages resulting from a tort. The liability of the defendant did not arise altogether by virtue of the statute, for there would have been a liability against the defendant even in the absence of a statute. The liability is not imposed as a penalty primarily, but as an indemnity for the damages sustained by reason of the death of plaintiff's intestate. The common law gave a remedy not exactly the same as the Massachusetts statute, but, at least, a remedy for the damage sustained by reason of the defendant's negligence. While it is true in the Vermont Case the judge delivering the opinion adheres to the Attrill-Huntington Case, supra, yet, in our opinion, the rule in the Attrill-Huntington Case is really not involved in the Vermont Case.

In Smith v. Colson, 31 Okla. 703, 123 Pac. 149, an action was brought to recover $900 for a penalty for failure of the mortgagee to acknowledge satisfaction of record of the mortgage, required under and by virtue of section 4746, Mans. Dig. Ark.

The defendant filed a demurrer on the ground that the cause of action was barred by the statute of limitations, under section 4482, Mans. Dig., which provides:

"All actions upon penal statutes, where the penalty, or any part thereof, goes to the state, or any county, or person suing for the same, shall be commenced within two years after the offense shall have been committed, or the cause of action shall have accrued."

The court held that the statute imposing the liability was not penal, and that the two years' limitation would not apply, and cites a great number of opinions, the majority of which we have examined, but we fail to find a single opinion which would sustain an action for the liability, had the same been brought in a foreign state. The liability being purely statutory, we have serious doubt if any court except those in Oklahoma would assume jurisdiction.

We are aware that there is quite an array of respectable authorities holding that statutes similar to the one sued on here are not penal, but are more remedial in their nature. With due deference to all authorities so holding, we are constrained to say that we are more strongly impressed with the authorities holding to the contrary view.

A statute which purports merely to make a person liable for the actual damage his wrongful act may cause another is remedial. It merely makes compensation, reimbursement, reparation. It remedies a wrong. But a statute which provides that a person doing a certain act shall incur a certain liability, without regard to whether doing that act injured anyone or not, without regard to the relation between the extent of the injury and the liability, is not compensatory, but rather in the nature of a punishment for the nonperformance of an act, or the performance of an unlawful act. Everything awarded in excess of the actual injury caused is for the purpose of punishment. The purpose of liability in excess of actual compensation is, by means of the penalty, to deter the wrongdoer from perpetrating the wrong, and this is the object of all punishment.

The conclusion to be drawn from plaintiffs' brief is that under the Arkansas law any officer of a corporation, filing a certificate which is false in any particular, becomes liable to all the creditors of the corporation for the full amount of their debts; and this without regard to whether the creditors ever saw the alleged false certificate, ever heard of it, were influenced by it in the least, without regard to whether they were injured by it, and without regard to the relation between the actual damage suffered as compared with the amount of the debts.

The distinction between such a statute and one providing for "actual" compensation is

clearly pointed out by the courts. Thus in Bank v. Bliss, 35 N. Y. Rep. 412, it is said:

"The liability of these defendants arose only from their violation of the directions of the sections above quoted from, the act under which the corporation was formed; not from their personal contract. * * *

"Under these sections, the trustees are declared to be jointly and severally liable for all the debts of the company, in case of a violation of their provisions. The liability, it must be observed, is not limited to the injury or damage sustained by the creditors in consequence of the violation; but upon failure to file the report, or upon making a prohibited dividend, however small or trifling the amount, the trustees are subject to the payment of the whole amount of the debts of the company then existing, and for all that shall be contracted, in the one case, before the report shall be made, and in the other, while they shall respectively continue in office. These provisions appear to be severally punitive, inflicted on the grounds of public policy, for the protection of creditors, and the prevention of frauds upon the public in respect to the financial condition of such corporation. It is clear that the liability of the trustees is not imposed as an indemnity, because it has no relation to the actual loss or injury sustained by the party in whose favor the action is given. The action depends wholly upon the statute; there never was any such remedy, or cause of action, in whole or in part, at common law. If any action could have been maintained at common law, for either of the causes mentioned in sections 12 and 13 of the general act, in relation to manufacturing corporations, it could extend only to the actual damages or injury sustained. But those elements have nothing to do with the actions given by these sections. Nor, indeed, is it necessary that the creditors should have sustained any injury or damage by reason of a violation of those sections. It is sufficient that the party prosecuting the action should be a creditor when the violation of the law takes place.

"For these reasons, I am satisfied that the sections 12 and 13 impose a penalty, or a disability in that nature, to which the shorter limitation of three years applies."

In Rogers et al. v. Bonnett et al., 2 Okla. 553, 37 Pac. 1078, we quote from the body of the opinion on page 558, as follows:

"Error is again assigned in this, that the complaint does not state facts sufficient to constitute a cause of action, and that the demurrer of plaintiffs in error covered the objections to the petition and evidence, that contribution cannot be enforced in this case since the statute under which this action is brought, to wit: ch. 18, art. 3, sec. 10, Statutes of Oklahoma. 1890, provides that, 'Directors of corporations must not make or create debts beyond their subscribed capital stock; * * * for a violation of the provisions'

of this section; * * * they are in their individual and private capacity jointly. and severally liable to the corporation and to the creditors thereof in the event of its dissolution, to the full amount of the debts contracted.' It is hereby provided that for a violation of its provisions the directors shall be liable in their individual and private capacity, both jointly and severally, to the corporation and its creditors. The provision here made is for the benefit of the corporation itself and its' creditors. No relief is afforded by it to the directors by which the liability is created as between themselves and against each other for contribution. If any such relief exists, it must be drawn from the principles of the common law.

"This suit is in no sense a suit upon contract. It is a suit brought, as the pleadings and evidence show, to enforce a liability created by statute. That makes this a case to enforce a penal liability or penalty. A liability created by the statute is in the nature of a punishment for a violation of its provisions, and is therefore a penalty for wrongdoing. (Bouv. Law Dict. vol. 2, p. 318.)

"A penalty or penal sum is a sum of money payable as an equivalent or punishment for an injury. (Rapalje & Wallace's Law Dict. vol. 2, p. 944.)

"A statute providing that officers of certain corporations shall be personally liable for the debts of the corporation in case they fail to file the annual certificates of their condition, imposes a penalty. (Mitchell v. Hotchkiss, 48 Conn. 9; 3 Williams' Executors, 3d Am. Ed. 1729; U. S. v. Daniel, 6 How. 11.)

"And those upon whom the penalty is imposed are in the eye of the law wrongdoers."

In Mohr v. Sands, 44 Okla. 330, 133 Pac. 238, in the body of the opinion, the court said:

"The next question presented is whether or not the plaintiff's cause of action is barred by the statute of limitations. The Nebraska statute provides that an attorney who is guilty of any deceitful collusion shall forfeit treble damages to the injured party, and the plaintiff demands treble damages in this case. If this action is one to recover a penalty, it is barred by the fourth subdivision of section 5550, Comp. Laws 1909 (section 4657, Rev. Laws 1910), which provides that an action on a statute for penalty or forfeiture shall be brought within one year. The plaintiff knew of the fraud that had been practiced upon her more than one year before this suit was brought. But she could not maintain the action for treble damages in the courts of this state, even though she had brought it within the year. It is well settled that the courts of one state will not enforce a penalty prescribed by the laws of another."

In Breitung v. Lindauer, 37 Mich. 217, the Supreme Court of Michigan stated as follows:

"A Michigan statute required annual reports of the condition of certain corporations to be filed (Comp. L., sec. 2840), and provided that if the directors 'intentionally neglect' to file them, they shall be liable for all debts of the corporation contracted during the period of neglect (Id., sec. 2858). Held (a) that the statute cannot be construed as though the word 'intentionally' was omitted; (b) that directors were not primarily liable under it; (c) that the liability imposed was in the nature of a penalty, sustained no contract obligation upon which creditors could rely, and if not put in judgment, could not be enforced after the repeal of the clause imposing it, even if incurred before."

In Irvine v. McKeon, 23 Cal. 472, the Supreme Court of California said in the syllabus:

"Section 14 of the General Corporation Law of April 22d, 1850, making the directors of a corporation jointly and severally liable for the excess of the debts of the corporation, over and above the amount of the capital stock actually paid in, being a statute creating a forfeiture, or imposing a penalty, is to be strictly construed."

In Bovee v. Boyle, 136 Pac. 467, the Court of Appeals of Colorado said in the third paragraph of the syllabus:

"Rev. St. 1908, sec. 911, providing for the filing of annual reports by the officers and directors of corporations, and making them individually liable for debts incurred during the preceding year in case of the failure to file, is penal in character, and must be strictly construed."

In Holt et al. v. Aetna Bldg. & Loan Ass'n, 78 Okla. 307, 190 Pac. 877, Rainey, C. J., delivering the opinion, states the following:

"Usury statutes that work a forfeiture are penal. Stockyards' State Bank v. Johnston, 52 Okla. 32, 152 Pac. 585; Ewell v. Daggs, supra; Poppleton v. Nelson, 12 Or. 349, 7 Pac. 492. 39 Cyc. 910, and cases cited; Tyler on Usury, p. 374. Such statutes must be strictly construed, and before one can recover the penalty therein imposed he must state specifically every fact to bring himself strictly within all their terms. Bunter v. Western Union Tel. Co., 2 Okla. 234, 37 Pac. 1087.

"Where transactions are penal or criminal in their nature, the intent of the parties is, in the absence of something to indicate the contrary, material."

In Blaine v. Curtis, 59 Vt. 120, 124, 7 Atl. 708, 59 Am. Rep. 702, Walker, J., says:

"It is well settled that no state will enforce penalties imposed by the laws of another state. Such laws are universally considered as having no extra-territorial operation or effect; whether the penalty be to the public or to persons. They are strictly local, and affect nothing more than they can reach within the limits of the state in which they are enacted. They cannot be enforced in the courts of another state either by force of the statute or upon the principles of state comity."

In Wright v. Bartlett, 43 N. H. 548, it is said:

"The provision of the law of Massachusetts entitling the debtor, when sued for the debt, to a deduction of three times the amount of the extra interest paid by him, is a matter relating only to the remedy, and cannot be enforced here."

In Barnes v. Whitaker, 22 Ill. 606, it was said:

"With the penalties imposed by the law upon the usurers for their violation of it, we have nothing to do. That is a matter between the state of Iowa and her citizens. We cannot punish her citizens for violating the laws to which they owe allegiance."

In the case of Gale v. Eastman, 7 Metcalf (Mass.) 14, plaintiff and defendant were citizens of New Hampshire. Defendant had borrowed from plaintiff a sum of money for which he executed his note; thereafter defendant paid, as interest, a sum which under the laws of New Hampshire would be usurious, and afterwards removed to the state of Massachusetts. The penalty for usury in New Hampshire was three times the amount above the lawful interest taken. An action was brought in the court of Massachusetts by plaintiff. Defendant pleaded the New Hampshire law on usury, and sought to enforce the penalty. It was held that the defendant was not entitled to any deduction from the amount due on the note.

It is the contention of the plaintiff that, the highest court in Arkansas having construed the statute under consideration, the construction placed by that court should govern in other courts. To this proposition we cannot agree. See Crippen v. Laighton (N. H.) 44 Atl. 538.

In 15 Corpus Juris, 928, it is said:

"In determining whether a statute is penal, so as to deny jurisdiction to the courts of another state, in which an action thereon is brought, such courts are not bound by the construction placed on the statute by the courts of the state which enacted it, but this is to be determined by the court in which the action is brought." Citing Southern R. Co. v. Decker, 5 Ga. A. 21, 62 S. E. 678; Whitlow v. Nashville, etc., R. Co., 114 Tenn. 344, 84 S. W. 618, 68 L. R. A. 503.

In Great Western Mach. Co. v. Smith, 87 Kan. 331, 124 Pac. 414, the third paragraph of the syllabus is as follows:

"The enforceability of such a statute in another state is not affected by the fact that the courts of the state enacting it have characterized it as penal, in connection with the rule of strict construction, and with the application of a statute of limitations upon actions to recover a penalty."

The judgment of the lower court is affirmed.

HARRISON, C. J., and ELTING and KENNAMER, JJ., concur; MILLER, J., concurs in the conclusion; JOHNSON, McNEILL, and NICHOLSON, JJ., dissent; KANE, J., not participating.

MILLER, J. (concurring). I concur in the conclusions reached by the learned Vice Chief Justice, but I do not concur in all the reasoning therein contained.

The trial court properly sustained the demurrer on the ground of misjoinder of causes of action. It was also correct in sustaining the demurrer on the ground that the petition failed to state a cause of action in favor of the plaintiffs and against the defendant, in that the petition did not plead the statute of Arkansas on which plaintiffs relied to recover from the defendant. The said statute is not in the record, therefore it is not before this court to construe whether it is penal or remedial.

McNEILL J. (dissenting). I am unable to agree with the opinion of the majority in so far as it holds that the Arkansas statute upon which this action is based is a penal statute in the international sense that a cause of action based thereon cannot be enforced in the courts of this state. In my judgment the maxim, to wit, "The courts of no country execute the penal laws of another," has no application to the statute in the case at bar. The difficulty is often encountered in recognizing the distinction between what are penal statutes within the international sense, and those that may be penal in their nature, in the sense that they are strictly construed and have the primary purpose of affording a private remedy to a person injured by the wrongful act of another. The distinction has been stated as follows:

"A statute is penal, within the rules of private international law, when it awards a penalty to the state or a public officer in its behalf, or to member of the public suing in the interest of the whole community, to redress a public wrong."

In my judgment this principle of law has no application to statutes the primary pur-

pose of which is to· afford a private remedy to a person injured by a wrongful act of another, and especially when the recovery is simply ·compensatory for the damages sustained, and there is a natural connection ·between the damage sustained and the tort of the wrongdoer.

The leading case on the subject is Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123, where it is said:

"It will be necessary, in the first place, to consider the true scope and meaning of the fundamental maxim of international law, stated by Chief Justice Marshall in the fewest possible words: 'The courts of no country execute the penal laws of another.' The Antelope, 10 Wheat. 66, 123 (6 L. Ed. 268). In interpreting this maxim, there ,is danger of being misled by the different shades of meaning allowed to the word 'penal' in our language. In the municipal law of England and America, the words 'penal' and 'penalty' have been used in various sénses. Strictly and primarily, they denote punishment, whether corporal or pecuniary, imposed and enforced by the state, for a crime or offense against its laws. * * * But they are also commonly used as including any extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, not limited to the damages suffered. * * * The question of whether a statute of one state, which, in some aspects may be called penal, is a penal law in the international sense, so that it cannot be enforced in the courts of another state, depends upon the question whether its purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act. * * * The provision of the statute of New York, now in question, making the officers of a corporation, who sign and record a false certificate of the amount of its capital stock, liable for all of its debts, is in no sense a criminal or quasi criminal law. * * * As the statute imposes a burdensome liability on the officers for their wrongful act, it may well be considered penal, in the sense that it should be strictly construed. But as it gives a civil remedy, at the private suit of the creditor only, and measured by the amount of his debt, it is as to him clearly remedial. To maintain such a suit is not to administer a punishment imposed upon an offender against the state, but simply to enforce a private right secured under its laws to an individual. We can see no just ground, on principle, for holding such a statute to be a penal law, in the sense that it cannot be enforced in a foreign state or country."

The identical question was before the Supreme Court of Kansas in the case of Great Western Mach. ·Co. v. Smith, 124 Pac. 414. The court stated as follows:

"The rule that a penal statute will not be enforced outside the territorial jurisdiction of the Legislature enacting it· applies only to such statutes as are entirely penal,·their sole · purpose being to inflict punishment for the violation of a law, for the public benefit, and not to those which are·in part compensatory; the violator being required to make good to an individual a possible loss having some connection with his default."

In the body of the opinion, the court used the following language:

"Obviously the statute under consideration was enacted with an especial view to the protection of creditors. No other penalty was provided for the failure of a corporation to file an annual statement. While in a particular instance, a creditor might not have suffered actual loss from such failure, the absence of the statement might easily be the occasion of his granting credit or forbearing to sue. The statute makes the officer, who fails to give the creditor information to which he is entitled, a surety for the corporation. The creditor receives no more than the amount of his debt from one whose misconduct has a·natural connection with his being the holder of a claim which he finds difficulty in enforcing against the principal."

The Supreme Court of Minnesota, in the case of Gulledge Brothers Lumber Co. v. Wenatchee Land Co., 142 N. W. 305, 46 L. R. A. (N. S.) 697, stated as follows:

"The question whether a statute of one state, which in some aspects may ·be called penal is a 'penal law' in the international sense, so that it cannot be enforced in the courts of another state, depends upon the question whether its purpose is to punish an offense against the public·justice of the state, or to afford a private remedy to a person injured by the wrongful act."

The Court of Appeals of New York, in the case of Loucks v. Standard Oil Co., of N. Y., 120 N. E. 198, stated as follows:

"A statute is penal, within the rules of private international law, when it awards a penalty to the state or a public officer in its behalf, or to a member of the public suing in the interest of the whole community to redress a public wrong."

The Supreme ·Court of Vermont, in a very recent case, Wellman v. Mead, 107 Atl. 396, stated as follows:

"The question of whether a statute of one state which in some aspects may be penal is a penal law in the international sense, so that it cannot be enforced in the courts of another state, depends on whether its purpose is to punish an offense against the public justice of the state, or whether it affords a private remedy to a person injured by the wrongful act."

The Supreme Court of Vermont, in the case of Farr v. Briggs' Estate, 47 Atl. 793. stated as follows:

"Deceased was a director of a corporation for the negotiating of loans and the sale of promissory notes and other securities organized in another state under a statute providing that directors of a corporation creating debts in excess of its subscribed capital stock are liable in their individual and private capacity to the creditors of the corporation to the full amount of the debt contracted, in the event of the dissolution of the corporation. Debts and liabilities were contracted in excess of the capital stock subscribed, and the corporation dissolved. Plaintiff purchased notes from the corporation in his state, which the corporation guaranteed, but they were never paid. Held, that he could maintain an action thereon against the estate of deceased outside the state where the corporation was created, since, the statute creating the liability being contractual, and not penal, an action thereon could be brought in any state."

The Supreme Court of Arkansas, in the case of Nebraska Nat. Bank v. Walsh, 59 S. W. 952, stated as follows:

"Sand. & H. Dig., secs. 1337, 1347, requiring the president and secretary of all corporations to make annual statements of the condition of the corporations, and making them personally liable for corporate debts where they neglect or refuse to make such statements, are not penal, but remedial, and are not within the statute requiring actions on penal statutes, where any part of the penalty goes to the state or county, to be brought within two years."

This case has been followed by the Supreme Court of Arkansas in the following cases: Hughes v. Kelly Bros., 129 S. W. 784; Taylor v. Dexter, 189 S. W. 1060; McDonald v. Mueler, 183 S. W. 751; and by the federal court in a case involving the Arkansas statute (Proctor Gamble Co. v. Warren, 180 Fed. 543).

The Supreme Court of the state of Colorado, in the case of Credit Men's Adjustment Co. v. Vickery, 161 Pac. 297, stated as follows:

"In some respects the statute is penal, while in others it is remedial in character; penal in its nature as to the directors for the purpose of determining their liability and to be strictly construed. When the liability is clearly shown, it is remedial in character as to creditors and to be liberally construed in its enforcement."

The Supreme Court of Mississippi, in the case of Louisville & N. R. Co. v. McCaskell, 53 South. 348, stated as follows:

"The rule that the criminal and penal laws of one state will not be enforced by the courts of another state, because such laws have no extraterritorial effect, applies only where the purpose is to punish an offense against the public justice, and does not apply where the purpose is to afford a private remedy to one injured by wrongful act; and hence punitive damages may be awarded by the courts of one state for a wrong done in another state."

The Supreme Court of New Hampshire, in the case of Hill v. Boston & M. R. Co., 89 Atl. 482, stated the rule in the fifth, sixth, and seventh paragraphs of the syllabus as follows:

"5. Where the controlling purpose of a statute is to impose a punishment for violating its provisions. it will not be enforced in a foreign jurisdiction.

"6. It is for the courts of the forum to determine whether a statute is penal in its nature so as to prevent its enforcement in a foreign jurisdiction, or whether it merely provides for the enforcement of private statutory rights of a transitory nature.

"7. A statute may be deemed penal in one aspect and remedial in another, within the rule against enforcing foreign penal statutes, and the fact that the public is incidentally protected by the enforcement of a statute is not conclusive in determining whether it is penal or remedial within such rule."

While the identical question was not involved, yet in defining what was strictly a penal statute, this court, quoting from Words and Phrases, page 5269, in the case of Smith v. Colson, 31 Okla. 703, 123 Pac. 149, stated:

"'Penal Laws' are those imposing punishment for an offense against the state, and which, by the American and English Constitutions, the executive of the state has the power to pardon."

This portion of the opinion was cited with approval in the case of St. Louis & S. F. R. Co. v. Steele, 37 Okla. 536, 133 Pac. 209.

The rule announced in 21 R. C. L., page 225, is as follows:

"The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual. And a distinction has been made between statutes which are entirely penal, their sole purpose being to punish a violation of the law for the public benefit, and those which are in part compensatory, the violator being required to make good to an individual a possible loss having some connection with his default. It is universally held that statutes of the former character can be executed only by the sovereignty enacting them. But by the weight of later authority, and by the better reason, actions may be maintained anywhere to enforce the liability to an individual, created by statutes of the latter kind."

The only recent case that I have been able to find holding to the contrary is the case of

Commercial National Bank v. Kirk (Pa.) 71 Atl. 1005; the Supreme Court of Pennsylvania, basing its opinion on the fact that the Montana Supreme Court had construed the statute to be penal, and stating it would accept that construction of the statute, and the action, being founded upon a penal statute, could not be enforced in the state of Pennsylvania. With due respect to said court, it is very evident that the court failed to recognize the distinction pointed out by the Supreme Court of the United States in the case of Huntington v. Attrill, supra, where the court used the following language:

"As the statute imposes a burdensome liability on the officers for their wrongful act, it may well be considered penal, in the sense that it should be strictly construed."

An examination of the decisions of Montana discloses that court had only construed the statute to be penal in the sense that the statute should be strictly construed, but the Pennsylvania court accepted the construction placed upon the statute by the Montana courts for all purposes. In my opinion, the majority opinion of this court fails to recognize this distinction. An examination of the cases cited in the majority opinion discloses that the question involved in most of these cases was whether the statute was penal, in the sense that it should be strictly construed.

In the case of Merchants' Bank of New Haven v. Bliss, 35 N. Y. 412, relied upon, the only question involved was the statute of limitations, and the syllabus in the case is as follows:

"The limitation of three years runs against an action for the penalty imposed upon the trustees of a manufacturing company for neglecting to file and publish an annual report; it is a suit for the benefit of party aggrieved."

In the case of Irvine v. McKeon, 23 Cal. 472, the question involved was simply whether the statute should be strictly construed, and no other question was considered by the court.

In the case of Bovee v. Boyle, 136 Pac. 467, by the Court of Appeals of Colorado, the question involved was whether the statute should be strictly construed. In the later case of Credit Men's Adjustment Co. v. Vickers, supra, the Supreme Court of Colorado cited with approval the case of Huntington v. Attrill, supra, and used the language quoted heretofore.

The case of Blaine v. Curtis (Vt.) 7 Atl. 708, is also cited. That case was founded upon a usury statute which permitted a recovery of three times the amount of interest paid, and while there is a distinction be-

tween that kind and character of statutes and one that permits only the recovery of the actual damage sustained, the Supreme Court of Vermont, in the late case of Wellman v. Mead, supra, after citing the case of Blaine v. Curtis, supra, and other cases, used the following language:

"The evident tendency of modern decisions is toward a broader comity in the enforcement of rights created by the Legislatures of sister states"

—and the court followed the Huntington v. Attrill Case.

The case of Carnahan v. Western Union Tel. Co., 89 Ind. 526, 46 Am. Rep. 175, while it announced the general rule that a state will not enforce the penal laws of another state, yet this case was distinguished by the Supreme Court of Indiana in the case of Burns v. Grand Rapids & I. R. Co., 15 N. E. 230, and the rule modified to a certain extent.

In regard to the Oklahoma cases cited to support the contention of the majority: In Rogers v. Bonnett, 2 Okla. 553, 37 Pac. 1078, the portion of the opinion in so far as it deals with this question was simply dictum, and the syllabus in the case does not even mention the proposition discussed in the body of the opinion. This case can easily be distinguished, for the reason it was discussing the question of whether the statute was penal in the sense that joint tort-feasors would be liable for contribution.

The next case is Mohr v. Sands, 44 Okla. 330, 133 Pac. 238. The court simply announced the broad principle which is stated as follows:

"It is well settled that the courts of one state will not enforce the penalty prescribed by the laws of another state."

To support this contention, the court cited the case of The Antelope, 6 L. Ed. 268, but did not mention the fact that the Supreme Court of the United States, in the later case of Huntington v. Attrill, supra, stated this maxim was too broad, and would no doubt be misleading in determining what was strictly penal statutes in the international sense construed. The court also cited the case of Wisconsin v. Pelican Ins. Co., 32 L. Ed. 239. This case was an action on behalf of the state to collect a penalty for the use and benefit of the state, and comes squarely within the class of cases announced in the case of Huntington v. Attrill, as being a penal statute. The case of Mohr v. Sands, supra, can easily be distinguished from the case at bar for the reason the statute involved in that case was imposing a liability of three times the amount of actual damages sustained. It is unnecessary to determine

whether the courts of this state would refuse to enforce such a statute, but if so, it should be on the theory that the law is against the public policy of the state, and not upon the theory that it is a penal statute. The statute under consideration does not permit the recovery of damages in excess of the creditor's debt or the damages that he has actually sustained. Whether this court would permit a statute to be enforced which imposes a liability of three times the amount of the creditor's claim or three times the damages actually sustained, is not before us for consideration, and it is unnecessary for us to determine that question.

In the case of Holt v. Aetna Bldg. & Loan Ass'n, 78 Okla. 307, 190 Pac. 872, this court was dealing with the question whether the statute should be strictly construed, and the court stated as follows:

"Such statutes must be strictly construed. Before one can recover the penalty therein imposed, he must state specifically every fact to bring him strictly within all their terms."

This case is not in conflict with the principle of law announced by the Supreme Court of the United States in the Huntington v. Attrill Case, but is in accord with the principle announced as being a statute penal in the sense that it should be strictly construed.

In the case of Breting v. Lindauer, 37 Mich. 217, the question involved was whether that statute was penal in the sense that the repeal of the statute in Michigan released the directors who intentionally neglected to file a report required by statute. The statute in Michigan, in addition to imposing a liability upon the director, made the intentional neglect to file the report a misdemeanor and subjected him to a fine.

The case of Wright v. Bartlett, 43 N. H. 548, is cited as supporting this contention. The Supreme Court of New Hampshire. however, in the later case of Hill v. Boston & M. R., 89 Atl. 482, quotes with approval and follows the Huntington v. Attrill Case, supra. The case of Barnes v. Whitaker, 22 Ill. 606, is also cited. The question involved in that case was the collection of a penalty for usury; a certain per cent. of the penalty was to go to the common school fund of the state of Iowa. That fact would take it out of the class of statutes the purpose of which was to afford a private remedy to a person injured by a wrongful act. The statute in that case was to punish an offense against the laws of the state of Iowa, and the redress was not compensation to a private individual, but a portion of the compensation belonged to the state of Iowa. This case comes squarely within the rule announced in the case of State of Wisconsin v. Pelican Ins. Co., 32 L. Ed. 239.

The suit in the instant case is founded upon the statute of Arkansas which provides that if the directors fail to file a certificate they become liable to the creditors for the amount of the creditors' debt. This, in my judgment, is simply a remedial statute, and provides a remedy in favor of the creditor against the individual for his wrongful act. and limits his recovery to the amount of his debt. As was said in the Kansas Case, supra, in substance:

"The statute makes the officer who makes a false certificate which the law imposes upon him to file, a surety for the corporation. The creditor receives no more than the amount of his debt, from one whose misconduct has a natural connection with his being the holder of a claim which he is unable to enforce against the principal."

It is my opinion that the decisions relied upon by the majority are not applicable to the facts in this case, nor do the authorities support the law as announced by the majority opinion, and they are clearly against the weight of authority of modern decisions.

For the reasons stated, I dissent. I am authorized to announce JOHNSON and NICHOLSON, JJ., concurring.