## AETNA BUILDING & LOAN ASS'N v. PHILLIPS et al.

No. 12465—Opinion Filed Feb. 19, 1924.

Rehearing Denied Oct. 27, 1925.

1. **Building and Loan Associations—Mutuality—Rights of Borrowing Members.**

Under the laws of the state pertaining to building and loan associations at the time of the transaction herein involved, mutuality was required, and the borrowing members were entitled to share equally in the profits

with the nonborrowing members, and they cannot be required to bear more than their proportionate amount of the losses and expenses of the association. Holt et al. v. Aetna Building & Loan Ass'n, 78 Okla. 307, 190 Pac. 872.

**2. Same—Action to Foreclose Mortgage—Judgment for Defendants Sustained.**

Record examined, and held, that there was competent evidence submitted on the trial supporting the verdict for defendants, which was in effect a finding that there was lack of mutuality among the shareholders of the plaintiff association at the time the contract sued on was made; held, that the contract sued on is not enforceable in this state as a building and loan contract; and held, that the judgment for the defendants based upon the verdict of the jury should be affirmed.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Woods County: Arthur G. Sutton, Judge.

Action by the Aetna Building & Loan Association, a corporation, against Ellen Phillips and Oliver P. Phillips, upon a promissory note and for foreclosure of a real estate mortgage. Judgment for defendants; plaintiff prosecutes appeal. Affirmed.

John D. Rogers and C. H. Mauntel, for plaintiff in error.

E. W. Snoddy, for defendants in error.

Opinion by SHACKELFORD, C. The parties will be referred to as plaintiff and defendants, as they appeared in the trial court.

This action was commenced in the district court of Woods county, against the defendants on the 5th of June, 1919, to recover a judgment for an alleged balance due upon a promissory note, in the sum of $1,302.62, accruing interest, and attorney fee of $25, and other costs; and for foreclosure of a certain real estate mortgage to satisfy such debt, etc.

It is alleged in the petition, in effect, that plaintiff is a Kansas corporation, duly authorized to do business in Oklahoma as a building and loan association; that on the 27th of November, 1909, the defendant Ellen Phillips, being a stockholder in the plaintiff building and loan association, owning eight shares of series stock in class "A", together with Oliver P. Phillips, executed to plaintiff their promissory note in the sum of $4,000, due on or before ten years from date, with interest payable in monthly installments of $33.33 per month, and providing

for payment of monthly dues upon stock in the sum of $20 per month, such payments being due on the 5th of each month; and providing in said note that in case of default of such payments or upon failure to perform the conditions of the mortgage, the said note should be immediately due and bear interest at the rate of ten per cent. per annum after default, and providing for a $25 attorney fee; that defendants executed a real estate mortgage upon lot three in block one in Waynoka Okla., as security upon such note; that defendants made default and that a balance of $1,302.62 is due and unpaid; and prays judgment for said sum and for foreclosure of the mortgage. Copies of the instruments are attached as parts of the petition.

The defendant Ellen Phillips filed an answer and cross-petition. In her answer she admitted the execution of the instruments, and alleged that they were executed in pursuance of a certain application made for a loan of money; that she received a loan of $4.000, less certain items of expense; that she had paid monthly installments to plaintiff in the sum of $53.33 until she had paid the sum of $5,492.99; that the relationship of borrower and lender existed between her and the plaintiff; that she made no bid of premium for the loan; that she was not a stockholder in the plaintiff association, and no shares were ever delivered to her; that the plan of plaintiff in making loans was a subterfuge to enable it to collect more than ten per cent. per annum interest on loans; that the rate of interest charged was in excess of 17 per cent. per annum, and in violation of the usury laws; denied all the allegations not admitted, and specifically denied that she was indebted to plaintiff in any sum. By way of cross-petition she seeks to recover payments in excess of the amount of the debt, and usurious interest, figured at $2.985, and $300 attorney fee.

Demurrer to the answer was interposed and overruled. Plaintiff then moved to require defendants to attach an itemized statement of payments; and the defendant attached as part of the answer an itemized statement of payments showing five payments of $20 each in 1909; and monthly payments made thereafter of $53.33 up to and including February, 1918, totaling the sum of $5,326.34; and alleged therein that after the first five payments, the payments were credited in her pass book as "Interest $20; premium $13.33: dues $20."

Plaintiff replied to the answer, as amended, to the following effect: A denial of all allegations except such as are admitted; and

admits that the instruments were made pursuant to written application for a loan; that Ellen Phillips is the sole owner of the property described in the mortgage; that $4,000, less items of expense, was all that was paid out by plaintiff on the loan; and denied the aggregate alleged to have been paid on the loan; and denied that the means employed was a subterfuge to evade the usury laws; and denied the allegations of the cross-petition, and alleged that the defendant agreed to pay $20 per month for stock, and had made such payments for 103 months, amounting to $2,060; and that the stock had earned dividends to the amount of $1,137.38, making a total worth of the stock in the sum of $3,197.38; and denied that after the first five payments the monthly payments were credited as dues, premium, and interest, as alleged, but alleges that the payments have been credited as "Dues $20; interest $33.33"; and denies that there was ever any agreement about premiums.

The case was called for trial on the 9th of February, 1921, and was tried to a jury. In the trial of the cause every question was eliminated except the question of lack of mutuality among the stockholders of the plaintiff building and loan association. This was the only question submitted to the jury; and a verdict was returned for defendant fixing the amount of her recovery against plaintiff at $63.72; on which judgment was entered for her, canceling the note and mortgage, and rendering judgment in her favor for the amount fixed by the jury. The verdict of the jury in favor of the defendant was, in effect, a finding by the jury that there was lack of mutuality among the stockholders. From the judgment the plaintiff prosecutes appeal.

Many errors of the trial court are assigned on which plaintiff relies for reversal of the judgment, but the one question which is decisive of this appeal is as to whether there was any competent evidence to support the conclusion of the jury that there was lack of mutuality among the plaintiff's shareholders. If the verdict is supported by competent evidence, the verdict and judgment should stand; otherwise the judgment should be reversed. There was evidence offered upon the part of the defendant to show that at the time of making the contract the plaintiff had a preferred class of shareholders, and such evidence was objected to because lack of mutuality had not been pleaded in the defendant's answer. An examination of the answer discloses that it was pleaded therein by the defendant that the relationship of the parties was that of borrower

and lender. If there was mutuality among the stockholders, the relationship was not merely that of borrower and lender, and the parties were bound by the building and loan contract, and it should be enforced as they made it; if, however, there was lack of mutuality among the shareholders, then the relationship was that of borrower and lender; therefore, when it was pleaded that the relationship of borrower and lender existed, it was the equivalent of pleading lack of mutuality, and was sufficient to apprise the plaintiff that one element of the defense was lack of mutuality, and was a sufficient plea to support the introduction of evidence to show a lack of mutuality.

In the trial of the cause there was introduced in evidence, as defendant's exhibit "B," stock certificate number 44,784, by the plaintiff association to Ellen Phillips, certifying that she is the owner of eight installment shares in class "A" of the par value of $500 each. This certificate is dated August 4, 1909, and has printed thereon an extract from the by-laws of the association, as follows:

"Sec. 13, Dividends.—All profits arising from the shareholders' payments shall be summed up as a whole in the months of January, and July, of each year, and out of such profits shall be paid all interest due and payable on prepaid or dividend, and guarantee shares, taxes on the assessed stock of the association and losses, if any. The board of directors shall then declare the remainder of such profits as dividends to all installment stock pro rata to the book value thereof, and all dividends so declared shall be credited to such stock on the books of the association and shall earn dividends thereafter the same as cash payments on the stock."

There is a provision in the mortgage with reference to the by-laws, as follows:

"Both interest and dues payable on the fifth day of every month until sufficient assets accumulate to pay to each shareholder $500 per share for each share of stock held by him, according to the by-laws of the Aetna Building & Loan Association."

On the trial of the cause, Mr. Downs, president of the plaintiff association, testified with reference to the classes of stock, and as to that kind referred to in the by-laws just quoted, as "prepaid or dividend" shares, and in speaking of that class referred to it as "deposit" shares, and said:

"They haven't issued any deposit stock for ten years. * * * We have nothing on our books except in the installment stock, the very same as was issued to Mrs. Phillips. We have no dividend or deposit stock, neith-

er have] we issued any for the past ten years."

He testified that his association does not issue deposit stock; but when, asked if it issued deposit or dividend stock at the time this loan was made, he said: "I won't be sure. * * * I won't be sure at the time or the date when we called in this deposit stock;" and when asked about a certain case tried in Oklahoma City upon a loan made in 1911, he said he remembered the case, and then was asked if deposit or dividend stock was issued, some of the sections appear stock was issued at that time, and he answered: "No, sir; I didn't think so. It might have been, I wouldn't be positive just the year we called it in." And when questioned about the section 13 of the by-laws, he answered: "Well, I think that is in our by-laws now—always has been." He was asked:

"Q. The by-laws of the Aetna Building and Loan Association at the time (i.e., the time the loan in question was made) this stock was issued, some of the sections appear on the back of the stock certificates, do they not? A. Yes, they should be yes. Q. I say, the by-laws which were in force. * * * A. (interrupting) I think so. Q. They are printed on the back of the stock certificates? A. I think so. Q. And they were in force at that time? A. I think so."

Then again, referring to the deposit or dividend stock, he said:

"I know we called in all of that stock about ten years ago and never issued any of it since. Q. Was that before or after this loan was made? A. Well, I would say that it was after the loan was made. * * * I wouldn't be sure, but I would think so."

It will be kept in mind that this loan contract was made as of the date of November 29, 1909, and the case was called for trial in February, 1921, on which event Mr. Downs was testifying. As nearly as Mr. Downs would fix the time when the deposit or dividend stock had been called in, was about ten years prior to the time he was testifying, or sometime in 1911, and he admits that such deposit or dividend stock might have been issued as late as in 1911; and that section 13 of the by-laws was in effect at the time of making the contract under consideration here.

We think that there was an abundance of evidence to warrant the jury in concluding that the shareholders in the plaintiff building and loan association did not all profit alike in the earnings of the association at the time this loan was made. The jury were warranted in concluding that at the time this loan was made there was deposit or dividend stock of the association outstanding, and likewise installment or loan stock outstanding of the class that was issued to the defendant Ellen Phillips at the time this contract was entered into; and that both classes of stock were outstanding until sometime in 1911; and that section 13 of the by-laws was in full force and effect during the period from the time this loan was made until the preferred class of stock was called in, something like two years after this contract was entered into. It is not easy to see how either court or jury could have reached any other conclusion from Mr. Downs' own statements. If, at the time this loan contract was made, the plaintiff association had outstanding a class of stock known as deposit or dividend stock, which was given a preference in the matter of dividends over the other class of stock outstanding, and of the kind issued to the defendant, known as installment stock, then there was not such mutuality among the stockholders of the association as was at that time required by our statutes providing for the organization of building and loan associations. Then, should the contract here under consideration be enforced as a building and loan contract, and according to the terms and conditions therein expressed; or should the relationship of the plaintiff and defendant be held to be that of borrower and lender and be enforced accordingly?

In Holt v. Aetna Building & Loan Association, 78 Okla. 307, 190 Pac. 872, a similar contract to the one here under consideration was before this court. The contract in the Holt Case, supra, was dated August 8, 1911. The same statutes controlling building and loan associations were in force at the time of the contract now before the court as at the time of the Holt contract. The same question of lack of mutuality among the shareholders of the association was raised in that case as in the case now before us.

In the Holt Case, supra, this court said:

"It seems clear that under the laws of the state, as they existed at the time of the transactions herein involved, mutuality was required, and that the borrowing members were entitled to share equally in the profits with the nonborrowing members, and they could not be required to bear more than their proportionate amount of the losses and expenses of the association."

After reciting section 13 of the by-laws of the plaintiff association, the court said:

"From the foregoing it clearly appears that the plaintiff was not a building and loan association as contemplated by the laws

of Oklahoma, in existence at the time the contract was made. The stockholders were not confined to those persons mentioned in the laws of this state, and contemplated by the laws in force at the time of the contract. The stock was not necessarily purchased by those of limited means, but could be subscribed for by capitalists, corporations or by any person desiring attractive interest on his investments, as well as by those compelled to subscribe for it in order to secure a loan. There was a want of mutuality between the borrowing stockholders and the others, in that the borrowing members—installment stockholders—were not entitled to any profit until after 'all interest due and payable on prepaid, deposit and dividend shares, taxes on the assessed stock of the association, and losses, if any' were paid, whereas other stockholders were entitled to interest on their stock out of its earnings without any deduction for taxes and losses. * * *

"Since plaintiff was not a building and loan association under our law in effect at the time the contract was made, and therefore was not entitled to the rights and privileges pertaining to such associations, what was the status of the loan? It cannot be worse than that of an ordinary loan, and considering the uncertainty of the law and the decisions relating thereto, it ought to have whatever security the law can throw around it as a loan, and not be subjected to the severe penalties imposed on those who wantonly and flagrantly violate the law. Aetna Bldg. & Loan Ass'n v. Rouch, 32 Okla. 735, 124 Pac. 24; Midland Sav. & Loan Co. v. Deaton, supra; Midland Sav. & Loan Co. v. Summers et al., supra.

"The rate of interest stipulated in the note was 10 per cent. per annum, but the entire contract, being invalid under our view, stands as if the loan had been made without reference to interest, in which case not the maximum contract rate, but the legal rate, of 6 per cent. per annum is the rate to be charged. Section 2, art. 14 (section 313. Williams' Ed.) Const.; 15 Ruling Case Law, 21; Washington, etc., Co. v. Stanley, supra; Ewell v. Daggs, 108 U. S. 143, 2 Sup. Ct. 408, 27 L. Ed. 682. * * *

"Having determined that plaintiff's contract is not strictly a building and loan contract, dues upon stock, fines, membership fees, and all other payments made, except interest actually due and the necessary and statutory fees for examining the title and preparing the abstract, must be credited on the loan. Midland. Sav. & Loan Co. v. Deaton, supra; Midland Sav. & Loan Co. v. Summers, supra; Meroney v. Atlanta Bldg. & Loan Ass'n, 116 N. C. 882, 21 S. E. 924, 47 Am. St. Rep. 841.''

Under the holding of this court in the Holt Case, supra, the contract here under consideration cannot be treated as a build-ing and loan contract because the business transacted between plaintiff and defendant did not conform to our statutory requirements in effect at the time of making the contract. As a building and loan contract the whole transaction was void, although apparently entered into in perfectly good faith by both parties. Then, the parties must be treated as borrower and lender without any agreement to pay a stipulated interest rate, and that being the case the statutory rate of 6 per cent. per annum must obtain. The defendant insists that when she is credited with the payments made on the partial payment basis, figuring interest at six per cent. per annum, she has overpaid the loan by about $360, and this seems not to be disputed by the plaintiff. The jury returned a verdict for defendant in the sum of $63.72, which is a much less sum than the defendant was really entitled to. Under the instructions of the court the verdict of the jury in favor of the defendant was, in effect, a finding that there was a lack of mutuality among the plaintiff's shareholders. The evidence was ample to support such a finding and the trial court adopted the finding and verdict of the jury and rendered judgment on the verdict; and we cannot say that the verdict and judgment are against the weight of the evidence.

The plaintiff insists that this case is controlled by Aetna Building & Loan Ass'n v. Hahn, 82 Okla. 110, 198 Pac. 331; but with this contention we cannot agree. We have given careful consideration to the Hahn Case, supra, and do not find that the question of lack of mutuality among plaintiffs shareholders was in any way raised or referred to in that case.

We have carefully examined all the assignments of error made by the plaintiff, and find no error having the effect of denying the plaintiff any substantial right upon the trial of the cause.

We therefore recommend that the judgment be affirmed.

By the Court: It is so ordered.

### On Rehearing.

PER CURIAM. The only contention made on rehearing is that the Hahn Case, supra, and not the Holt Case, supra, is controlling. The opinion in the Hahn Case shows that the defendant pleaded that the relation of lender and borrower existed It also shows that no evidence was introduced by defendants. Defendants in that case made no contention that they were in a different class from other stock-

holders and were discriminated against in the matter of dividends. Their sole defense was, in effect, that the payments actually made exceeded the constitutional contract rate of interest and constituted usury without regard to the question of mutuality. Assuming their pleading was sufficient to present the defense of lack of mutuality they introduced no proof thereto. If they had made such contention and supported same by sufficient quantum of proof, as they might have done, then, under the Holt Case, the event of that action might have been different. In short, this court, in the Hahn Case, assumed that there was mutuality among the members, there being no proof to the contrary, and did not consider the effect of lack of mutuality in determining whether the contract should be enforced as a building and loan contract. The contention that the Hahn Case is controlling in the instant case is to beg the question, since the question of mutuality is properly raised and it inheres in the verdict, reasonably supported by competent evidence, that there was lack of mutuality. The section of the by-laws indorsed on the certificate shown by the opinion above tends to show a discrimination or lack of mutuality among the members, not permitted by the law at that time. This and other testimony bring this case clearly within the rules of the Holt Case. The contention on rehearing that other loans of the association may be vulnerable to the rules of the Holt Case is untenable judicially. The aims and purposes of such associations, as authorized by law at the time in question, are enumerated in the Holt Case, the purpose of the law being to enable aggregations of laborers and those of moderate means, by weekly or monthly assessments, to accumulate a fund to be loaned to those so contributing, for the purpose of building their homes—a co-operative plan. It seems such original purpose did not contemplate the purchase of stock by those seeking attractive investment for their surplus capital, but not desiring to borrow from the common fund for home building, such investors having preference rights of interest under said by-laws. In 1915 the Legislature provided that payments made by the borrower as dues on installments on shares of stock should not be computed as interest on the loan. It provided in 1913 that such associations may dispense with the offer of moneys for bid and in lieu thereof loan their moneys to members at such rate of interest, or interest and premium, as may be provided by the by-laws; that premiums paid in installments should .

not be deemed usurious, but taken to be payments as it falls due, and be lawful unless the premium with interest should exceed one per cent. per month. These, together with the other immunities, were matters of legislative cognizance, and indeed very materially changed the original purposes of such associations. These have no retroactive force affecting the instant case. This court is bound to apply the law governing such associations as they existed at the time of the transaction, herein. This was done in the opinion above by following the Holt Case, which, we think, on mature consideration, is controlling.

. Let the opinion by SHACKELFORD, C., herein be refiled as the opinion of the court, and rehearing denied.